(No. 12020.—Reversed and remanded.)

THE PEOPLE ex rel. Mrs. John MacMahon et al. Appellants,
vs. EDWIN S. DAVIS et al. Appellees.

*Opinion filed June 20, 1918—Rehearing denied October 3, 1918.*

1. MUNICIPAL CORPORATIONS—*city council may reconsider its
vote on questions pending.* A municipal council, like other legis-
lative bodies, has a right to reconsider, under parliamentary rules,
its votes and action upon questions rightfully pending before it
and rescind its previous action.

2. SAME—*the action of the council must be construed in accord-
ance with general parliamentary law.* The action of a city council
must be construed in accordance with general parliamentary law
not inconsistent with the rules of the council and not in accordance
with some exceptional usage in the house of representatives of
the United States.

3. SAME—*section 29 of rules of Chicago city council construed.*
Section 29 of the rules of the Chicago city council, which provides
that a motion to take any motion or other question from the table
may be proposed at the same meeting at which the motion or other
question was laid on the table, provided there is a two-thirds vote
therefor, merely regulates the practice at such meeting and is not
inconsistent with the general rule of parliamentary law permitting
a motion to lay on the table to be reconsidered by a majority vote
at a later meeting.

4. SAME—*council may reconsider confirmation of appointments.*
A city council, acting under general parliamentary law and under
its own rules adopted for the reconsideration of questions, may re-
consider the confirmation of appointments to office by the mayor,
as the confirmation of executive appointments is not the same thing
as an election to office.

DUNCAN, C. J., and CARTWRIGHT and CARTER, JJ., dissenting.

APPEAL from the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Circuit Court
of Cook county; the Hon. CHARLES M. WALKER, Judge,
presiding.

MACLAY HOYNE, State's Attorney, (DONALD L. MOR-
RILL, of counsel,) for appellants.

SAMUEL A. ETTELSON, and CHESTER E. CLEVELAND,
for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Fiftieth General Assembly passed with an emergency clause an act which was approved by the Governor on April 20, 1917, (Laws of 1917, p. 724,) amending all those sections of the School law which related to boards of education in cities having a population exceeding 100,000. By section 128 it was provided as follows:

"Sec. 128. Each city having a population exceeding 100,000 inhabitants shall constitute one school district which shall maintain a thorough and efficient system of free schools, which shall be under the charge of a board of education, which shall be a body politic and corporate, by the name of 'Board of Education of the city of.........,' and by that name may sue and be sued in all courts and places where judicial proceedings are had. The said board of education shall consist of eleven members, to be appointed by the mayor, with the approval of the city council, three of whom shall be appointed for the term of one year, two of whom for the term of two years, two of whom for the term of three years, two of whom for the term of four years, and two of whom for the term of five years. Thereafter, at the expiration of the term of any member of said board, his successor shall be appointed in like manner; and all persons thus appointed, and their successors, shall hold office for the term of five years from the first day of May of the year in which they are appointed. Any vacancy that may occur in the membership of said board of education shall be filled through appointment by the mayor, with the approval of the city council, for the unexpired term. If any person so appointed shall fail to qualify within a period of thirty days after his appointment, the office shall be filled by a new appointment for the unexpired term: *Provided, however,* that in such cities wherein at the time this law shall go into effect there are members of a board of education holding office by appointment, such members shall continue in their office until eleven persons have been

appointed and qualified as members of said board of education under this act. No power vested in such board of education, or in any of its officers, agents or employees, shall be exercised by the city council of such city."

Prior to April 20, 1917, the board of education of the city of Chicago consisted of certain persons holding their office by appointment of the mayor. After that date the mayor appointed under the new law two of the former members of the board, and on June 18, 1917, he submitted to the council the names of nine other persons for appointment as members of the board of education. These nine nominees are the appellees. On motion of one of the aldermen to concur in the appointments to membership on the board of education the motion prevailed. The vote by yeas and nays was 44 yeas and 25 nays. Thereupon one of the aldermen voting in the affirmative moved to reconsider the vote. The alderman who made the motion to concur in the appointments moved to lay the motion to reconsider on the table. The motion to lay on the table prevailed and the council adjourned to June 22, 1917, the time fixed for the next regular meeting of the council. On that day a motion was made that the corporation counsel be directed to prepare an opinion as to whether the council had any right to reconsider the vote on concurrence in the appointments to membership on the board of education. Thereupon a motion was made to adjourn and the yeas and nays were demanded on the motion, but the mayor having put the motion to a *viva voce* vote declared that the motion was carried and that the council was adjourned. An alderman appealed from the decision of the chair declaring the motion to adjourn carried, and the mayor thereupon left the council chamber, the aldermen remaining in their seats. On motion of one of the aldermen another alderman was selected to act as temporary chairman during the mayor's absence and took the chair. The question was then put on the appeal from the decision of the chair on the motion to

adjourn and resulted in one vote to sustain the decision of the chair and 53 against it. The question was then put on the motion to adjourn, and the motion was lost by a vote of one to 51. A committee having been selected to notify the mayor that the council was in session, reported that they had waited on the mayor and informed him that the council was in session, and that he had answered he was much obliged,—he would talk the matter over with the corporation counsel. A motion was then made to take from the table the motion to reconsider the vote on the motion made June 18, 1917, to concur in the appointments to membership on the board of education, which motion had been laid on the table June 18, 1917, and the motion prevailed by a vote of 46 yeas and 22 nays. A motion to lay on the table was held to be out of order. Permission was denied the maker of the motion to reconsider to withdraw it. The motion to adjourn was lost, and the question then being put on the motion to reconsider the vote to concur in the appointments to membership on the board of education, the motion to reconsider prevailed by a vote of 46 yeas and 20 nays, and the question then being put on the motion to concur in the appointments to membership on the board of education made June 18, 1917, the vote was 22 yeas and 45 nays, and the chair thereupon declared that the motion to concur was lost. The members of the board of education prior to April 20, 1917, had continued after the passage and approval of that act to transact the business and perform the duties of a board of education until June 19, 1917, since which time they have been prevented by the appellees from performing such duties and transacting such business, and the appellees on and since June 19, 1917, have assumed and pretended to use, exercise, enjoy and perform the franchises, functions, duties and powers of office of members of the board of education of the city of Chicago. On June 30, 1917, the relators, who are the members of the board of education prior to April 20, 1917, filed a petition in the

circuit court of Cook county for leave to file an information
in the nature of *quo warranto* against the appellees, and the
court on a hearing granted leave. Afterward the court, on
motion of the appellees, vacated the order granting leave
and ordered the petition dismissed. On appeal to the Ap-
pellate Court for the First District the judgment was af-
firmed, and a certificate of importance and appeal have been
granted to this court.

The petition for leave to file the information stated all
the facts which have been mentioned. It contained a copy
of the records of the city council of the meetings of June 18
and June 22 and set forth the rules adopted by the city
council of the city of Chicago, and there was attached as
an exhibit a copy of Roberts' Rules of Order, which one
of the rules of the city council require to govern the coun-
cil in all cases to which they are applicable and in which
they are not inconsistent with the standing rules of the
council. The information was, in substance, a copy of the
petition for leave to file.

A number of questions of practice have been raised and
discussed in the briefs. In the view we take of the case the
questions of practice raised are of no importance, for upon
a consideration of the merits as they appear from the rec-
ord the relators should have had leave to file the informa-
tion, and it is therefore immaterial whether the court had
power to grant the motion to vacate the order at the time
and under the circumstances it did or not. By section 7 of
article 3 of the Cities and Villages act the city council is
authorized to determine its own rules of proceeding. A
municipal council, like other legislative bodies, has a right to
reconsider, under parliamentary rules, its votes and action
upon questions rightfully pending before it and rescind its
previous action. (*Jersey City* v. *State,* 30 N. J. L. 521;
*Higgins* v. *Curtis,* 39 Kan. 283; *Tuell* v. *Meacham Con-
struction Co.* 145 Ky. 181.) The right is recognized by
section 14 of said article 3, which provides that no vote of

the city council shall be reconsidered or rescinded at a special meeting unless at such special meeting there be present · as large a number of aldermen as were present when such vote was taken. In *Beckwith* v. *English,* 51 Ill. 147, the board of supervisors of Vermilion county voted to levy a tax to build a bridge but the next day rescinded the vote and laid the resolution on the table. Nevertheless the clerk extended the tax, and it was held that he had no right to do so. The only important question raised was as to the power of the board of supervisors to reconsider the resolution, and it was held that they had the power and the clerk had no right to extend the tax.

The rule in regard to motions to reconsider adopted by the city council is rule 37, which provides as follows: "A vote or question may be reconsidered at any time during the same meeting or at the first regular meeting held thereafter. A motion for reconsideration having been once made and decided in the negative shall not be renewed, nor shall a vote to reconsider be reconsidered." Rule 52 provides that "the rules of parliamentary practice comprised in Roberts' Rules of Order shall govern the council in all cases to which they are applicable and in which they are not inconsistent with the standing rules of this council." Immediately after the adoption of the motion to concur in the appointments one of the aldermen who had voted for the motion moved to reconsider the vote. If this motion had been put and failed the action of the council would have been final. Instead, the maker of the original motion to concur moved to lay the motion on the table and the motion prevailed. The effect of the motion to reconsider is stated in Roberts' Rules of Order to be to suspend all action that the original motion would have required until the reconsideration is acted upon, but if it is not called up, this effect terminates with the session except in an assembly having regular meetings as often as quarterly, when, if not called up, its effect does not terminate until the end of the next regular session.

Rule 29 of the city council refers to the motion to lay on the table, and is as follows: "A motion to simply lay a question on the table shall not be debatable, but a motion to lay on the table and publish, or any other condition, shall be subject to amendment and debate. A motion to take any motion or other proposition from the table may be proposed at the same meeting at which such motion or proposition was laid upon the table, provided two-thirds of the aldermen vote therefor." The object of the motion to lay on the table is stated in Roberts' Rules of Order to be to enable the assembly, in order to attend to more urgent business, to lay aside the pending question in such a way that its consideration may be resumed at the will of the assembly as easily as if it were a new question and in preference to new questions competing with it for consideration. In legislative bodies, and all others that do not have regular sessions as often as quarterly, questions laid on the table remain there for that entire session unless taken up before the session closes. In deliberative bodies with regular sessions as frequent as quarterly the sessions usually are very short, and questions laid on the table remain there until the close of the next regular session, if not taken up earlier. In ordinary deliberative assemblies a question is supposed to be laid on the table only temporarily, with the expectation of its consideration being resumed after the disposal of the interrupting question or at a more convenient season. When taken up, the question, with everything adhering to it, is before the assembly exactly as when it was laid on the table.

The practice of the house of representatives of the United States in regard to the use of the motion to lay on the table is different from that of general parliamentary law. In that body the motion to lay on the table is used only for the purpose of making a final unfavorable disposition of a matter. (5 Hinds' Precedents of the House of Representatives, sec. 5628, note 1.) The usage of the house of representatives in this respect is recognized as excep-

tional, and the usage by which the motion to lay on the table has, contrary to general parliamentary law, become the means of a final adverse disposition of a matter is explained in 5 Hinds' Precedents, sec. 5389. The action of the council must be construed in accordance with general parliamentary law and not in accordance with the exceptional usage of the house of representatives. Indeed, counsel for the appellees do not contend otherwise, but they insist that the vote concurring in the appointments was not subject to reconsideration and that the council's action was in violation of its rules.

It is argued that rule 29, which has been quoted, limits the right to take any matter from the table to the same meeting at which it was laid on the table and also requires a two-thirds vote of the aldermen for that purpose. Roberts' Rules of Order is inconsistent with this construction of rule 29, for under those rules the question may be taken from the table at the same or the next meeting. The rules are not, however, really inconsistent, for the only effect of rule 29 is to restrict the right to take a question from the table at the meeting at which it was laid on the table. Where a question has been laid on the table by a majority vote and thus postponed to other business, it can not be again brought up for consideration at the same meeting except by a two-thirds vote, though the majority may take it up at a later meeting.

It is insisted that the council has no power to reconsider an election of officers by it; that the confirmation of an appointment is virtually an election to office; that the same rule applies to confirmations as to elections, and that the weight of judicial authority denies to deliberative assemblies the power to reconsider the election of an officer which it was authorized to make. This is not, however, the case of an election,—a choice between two or more candidates. The council does not in any sense choose the appointee. The question before it is the approval of an executive act

of the mayor. Its action is discretionary and deliberative. No good reason is apparent why the council may not establish rules in such cases for the government of its own procedure in arriving at its final judgment as well as in other cases. Orderly procedure requires some rules for the proper dispatch of business and deliberation in its conduct. The confirmation of executive appointments should be deliberately considered, and the rules applicable to ordinary questions to secure such deliberation may well be applied.

The question of the power of the senate to reconsider its action in advising and consenting to an appointment by the Governor of a member of the board of State tax commissioners arose in Michigan and was decided in *Attorney General* v. *Oakman,* 126 Mich. 717. The senate having adopted a resolution confirming the appointment, a motion to reconsider the vote was made at the same executive session and prevailed. The question then recurring on the original resolution was decided in the negative. In an action to determine the appointee's title to the office the court stated the question to be whether the senate, at the same session and before any action based upon the first vote had been taken, might reconsider the vote by which it had advised and consented to the nomination of the Governor. The reasons given by the court in deciding the case and the authorities cited in the opinion completely answer the contentions of the appellees. The court said (p. 721) : "It is contended by the respondent that the senate, in consenting to an appointment by the Governor, is performing an executive and not a legislative duty, and that when it has once given its consent it has exhausted its power; and it is further contended that rule 40 has no application. It is conceded by the relator, and has been held by this court, following *Marbury* v. *Madison,* 1 Cranch, 137, that when the appointing power has once exercised its functions it has no power to recall an appointment. (See *Speed* v. *Detroit Common Council,* 97 Mich. 198; 56 N. W. Rep. 570.) The

question recurs whether, where an appointment or concur-
rence in an appointment is a subject of action by a delib-
erative body, that body may by rules of its own, or acting
under usual parliamentary rules, cast a vote upon the sub-
ject which is subject to reconsideration, for if such course
is permissible the appointment is not complete beyond re-
call until the power to reconsider has been cut off by the
lapse of time. Fortunately, authorities bearing upon this
subject are not wanting and it only remains to apply them.
In *Wood* v. *Cutter*, 138 Mass. 149, the school committee
of a town had authority to elect a superintendent. The
committee voted to elect relator. At the same meeting a
motion to reconsider was made and carried and the respond-
ent was elected. The language of Holmes, J., is pertinent
to this case: 'It begs the question to say that the board
had once definitively voted in pursuance of the instructions
of the town meeting and therefore was *functus officio* and
could not reconsider its vote. The vote was not definitive
if it contained the usual implied condition that it was
not reconsidered in accordance with ordinary parliamentary
practice, and it must be taken to have been passed subject
to the usual incidents of votes, unless some ground is shown
for treating it as an exception to common rules.' The rul-
ing in the case cited was re-affirmed in the case of *Reed* v.
*School Committee*, 176 Mass. 473; 57 N. E. Rep. 961.
The case of *State* v. *Foster*, 7 N. J. L. 101, is a leading
case on this question. The power to appoint a clerk for
the county of Gloucester was vested in a joint meeting of
the legislative council and General Assembly. At such a
session a vote was taken and a majority voted for relator,
but the presiding officer failed to declare the election under
the mistaken view that a majority of all members elect was
required and that a majority of a quorum was not enough
to elect. The joint meeting then proceeded to elect respond-
ent. The court determined the case distinctly upon the
ground 'that all deliberative assemblies during their session

have a right to do and undo, to consider and reconsider, as often as they think proper, and it is the result, only, which is done.' It was further said: 'So long as the joint meeting was in session they had a right to reconsider any question which had been before them or any vote which they had made.' This case was approved in *Whitney* v. *Van-Buskirk*, 40 N. J. L. 467, and by the Supreme Court of Massachusetts in *Baker* v. *Cushman*, 127 Mass. 105. The case of *People* v. *Mills*, 32 Hun, 459, fully sustains the contention of relator. Also, see *Conger* v. *Gilmer*, 32 Cal. 75."

The principle announced in the *Oakman case* is sustained by the authorities cited and is conclusive of the question under consideration here. The motion to reconsider the vote upon the approval of the mayor's appointments was made at the same session at which it was taken and the question was then laid on the table, to be taken up later at the convenience of the council, in accordance with its rules. The question of reconsideration remained undetermined in the possession of the council awaiting its action. The action of the appellees in assuming the offices the next day, while the question of the confirmation of their appointment was pending in the council, and in afterward exercising the powers and duties of the offices, did not have the effect of giving them any title to the offices. The effect of the motion to reconsider the vote to concur in the appointments was to suspend all action based upon that vote until the reconsideration was acted upon. The vote to reconsider at the meeting of June 22 was an annulment of the previous vote, and the subsequent vote was effectual to disapprove the appointments.

The judgments of the Appellate Court and the circuit court are reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*

DUNCAN, C. J., and CARTWRIGHT and CARTER, JJ., dissenting.