THE CITY OF KANKAKEE, Appellant, *vs.* LEN SMALL *et al.*
Appellees.

*Opinion filed April 24, 1925.*

I. SPECIAL ASSESSMENTS—*entire ordinance is not void because
provision for court costs is excessive.* The fact that the amount
named in an improvement ordinance as being necessary to cover
court costs and expenses exceeds the amount named in the engi-
neer's estimate and the six per cent allowed by statute does not
render the entire ordinance void, and the provision is illegal only
as to the excess over six per cent.

2. SAME—*valid ordinance is essential to assessment proceeding.*
A valid ordinance is the foundation of any improvement by special
assessment and cannot be dispensed with.

3. SAME—*statutes authorizing taxes or assessments must be
construed strictly.* Statutes granting power to levy taxes or as-
sessments must be construed strictly.

4. SAME—*improvement ordinance, once rejected, cannot be re-
considered at subsequent meeting of council.* Where an improve-
ment ordinance is rejected by proper vote at a regular meeting
of the city council it cannot be reconsidered and adopted at a sub-
sequent meeting of the council, as the rejection of the ordinance
vitiates all proceedings prior thereto, and to bring the matter up
again all the preliminary requirements of the statute for a new
ordinance are necessary, including the hearing on the recommen-
dations of the board of local improvements.

5. MUNICIPAL CORPORATIONS—*when council cannot reconsider
its action at subsequent meeting.* While a city council is given by
statute the power to make its own rules of procedure they may not
be invoked to defeat rights which have intervened by reason of a
legal action of that body, and where the council has finally voted
upon a proposition and no motion for reconsideration or other
motion is pending thereon, it cannot reconsider its action at an-
other meeting where the rights of other persons have intervened.

APPEAL from the County Court of Kankakee county;
the Hon. HENRY F. RUEL, Judge, presiding.

WALTER C. SCHNEIDER, City Attorney, JOHN H. BECK-
ERS, and H. H. WHEELER, for appellant.

JOHN A. MAYHEW, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant filed its petition in the county court of Kankakee county to confirm a special assessment for the paving of a street in the city of Kankakee. An assessment roll was filed. Appellees objected to the confirmation of the same and filed twenty-seven objections. The principal objections were, that the ordinance was not properly passed, that it was unreasonable and uncertain, and that it was void because of a substantial variance between the engineer's estimate attached to the ordinance and the ordinance proper, in that the estimate provided the sum of $1651 for court costs and other lawful expenses while the ordinance provided the sum of $1706 for such costs and expenses. The trial court overruled all objections other than the one last referred to and sustained it, held the ordinance void and dismissed the petition. The city has appealed.

The objectors have filed cross-errors, contending that the court erred in overruling objections filed by them. We will consider first the objection sustained by the trial court.

The estimate of the cost of the improvement in the resolution of the board of local improvements was: "Court costs and other lawful expenses not in excess of six per cent of the estimated cost of said improvement, $1651." Section 4 of the ordinance provided: "That the improvement herein provided for, and the whole cost of said improvement, including the sum of seventeen hundred six and no/100 dollars, being the amount included in the estimate of said engineer of the board of local improvements, hereto attached, as the court costs and other lawful expenses as provided for by section ninety-four (94) of an act entitled 'An act concerning local improvements,' approved June 14, 1897, as amended, be paid for by special assessment to be levied upon the property specially benefited, to the amount that the same may be legally assessed therefor, in accordance with the act of the General Assembly of the State of

Illinois, entitled 'An act concerning local improvements,' approved June 14, 1897, and amendments thereto." It was objected that this difference of $55 constituted a willful and substantial variance between the resolution and the ordinance. The total cost of the improvement as shown by the estimate is $29,220, including the sum of $1651. Section 94 of the Local Improvement act (Smith's Stat. 1923, p. 351,) provides that in cities, towns and villages having a population of less than 100,000, such city, town or village "may in and by the ordinance providing for the assessment prescribed, provide that a certain sum, not to exceed six percentum of the amount of such assessment," shall be applied toward the payment of the cost of making and collecting the assessment. While it is the rule that a substantial variance between the estimate and the ordinance vitiates the latter, (*Gardner* v. *City of Chicago,* 224 Ill. 254; *Clarke* v. *City of Chicago,* 185 id. 354;) the matter of costs and expenses of the proceeding is fixed by statute, and the city council has power to pass an ordinance providing that such costs and expenses shall be paid by special assessment up to the statutory limit of six per cent, and the provision of the ordinance was not illegal except as to the excess above six per cent. (*Village of River Forest* v. *Cummings,* 261 Ill. 228.) It was therefore error on the part of the court to sustain the objection to the ordinance except as to the $55 in excess of six per cent of the cost of the improvement, and it was error to dismiss the petition on that ground.

We come, then, to consider the cross-errors assigned by appellees. In their first objection they set out that the ordinance was not properly passed by the city council. It appears from the record that on April 21, 1924, the ordinance was presented to the city council, and at that time a motion was made by one of the aldermen to reject the same, and by a vote of 12 to 2 the ordinance was rejected. Nothing further appears to have been done at this meeting of the city council, but at a later meeting, which appellees say is

the second subsequent meeting, held on May 19, 1924, alderman Hertz, one of the two aldermen who voted against the rejection of the ordinance at the meeting of April 21, made a motion that the city council reconsider its vote by which the ordinance was rejected. The records of the city clerk's office show that this motion was carried, though no roll call appears to have been taken on the same. A motion was then made and carried to suspend the rules and put the ordinance on its passage. This motion prevailed. A vote was taken on the ordinance and it was declared passed. Appellees contend that the vote on May 19 to reconsider the action rejecting the ordinance came too late; that such action had become final and the city council did not have authority to pass the ordinance on reconsideration at a later meeting.

A valid ordinance is the foundation of any improvement by special assessment and cannot be dispensed with. (*City of East St. Louis* v. *Albrecht,* 150 Ill. 506.) Statutes granting power to levy taxes or assessments must be construed strictly. (*Clarke* v. *City of Chicago, supra.*) While a city council is given by statute the power to make its own rules of procedure, they may not be invoked to defeat rights which have intervened by reason of a legal action of that body.

The effect of a reconsideration, at a subsequent meeting, of a vote by a city council rejecting a local improvement ordinance has not been previously considered by this court. In *People* v. *Davis,* 284 Ill. 439, the question of the power of the city council to reconsider its action confirming the appointment of members of the school board of the city of Chicago was under consideration. It appears that the mayor of that city had submitted the names of certain persons for appointment as members of the board of education. On motion the appointment was concurred in by vote of 44 yeas and 25 nays, whereupon one of the aldermen voting in the affirmative moved to reconsider the vote. Another alderman moved to lay the motion to reconsider on the table.

The motion to table prevailed and the council adjourned to its next regular meeting. On that day a motion was made to take from the table the motion to reconsider the vote on confirmation of the appointment made at the previous meeting. This motion prevailed and the motion to reconsider was adopted by a vote of 46 yeas and 20 nays, and the question then recurring on the motion to concur in the appointments made by the mayor, the same was lost by a vote of 22 yeas and 45 nays. The question in the case was whether or not there had been in law a confirmation of the names presented by the mayor as members of the school board. Certain rules of procedure were referred to in that case and the power of the city council to reconsider its action was discussed. It was held that the motion to reconsider having been made at the meeting at which the vote of concurrence had been taken, and the same having been tabled awaiting later action, there had been no final action on the matter, but the effect of the motion to reconsider was to suspend all action based on that vote until the matter of reconsideration was acted upon, and that the city council had power at the subsequent meeting to refuse to concur in the appointments made by the mayor.

In *State* v. *Foster,* 7 N. J. L. 123, it was sought by *quo warranto* to test the right of Foster to the office of clerk of the common pleas court of the county of Gloucester. It appears that under the law of that State the right to appoint such clerk was vested in the legislative council and General Assembly of the State, and it was claimed on behalf of the relator, Ephraim Miller, that he had received the vote of the council and General Assembly for that position and was entitled to it. It appears that the legislative council and General Assembly in a joint meeting, at which there were fifty-five members, on vote for such clerk gave Miller 28 votes and Foster 27 votes. The chairman of the meeting being of the opinion that this was not sufficient to

elect, called for another vote. It appears that several votes were taken, when the contention was raised that Miller having at one time received 28 votes had been elected, and on a vote as to whether or not the decision of the chair in holding there was no election was correct, it was decided by a majority of the fifty-five members that such decision was correct, and on a later vote Foster received 31 votes and Miller 24 votes, and Foster was declared elected. All of these votes took place at the same meeting. It was in that case held that the vote sustaining the judgment of the chair amounted, in effect, to a reconsideration of the vote on the election of clerk, it being there held: "In this case, so long as the joint meeting was in session they had a right to reconsider any question which had been before them or any vote which they had made."

In *Whitney* v. *VanBuskirk*, 40 N. J. L. 463, the question of the power of the city council to reconsider its vote arose. It appears that the chief of police of the city of Bayonne, who held his office upon nomination by the mayor and confirmation by the common council of the city, had resigned. The resignation was presented to the board of councilmen at its meeting on December 4, 1877, accompanied by the approval of the mayor of such resignation and a request for the acceptance thereof by the council. The council at that meeting received and accepted the resignation and confirmed the appointment of the defendant, VanBuskirk. The resignation was to take effect on the first of January next following, and the appointment of VanBuskirk was likewise to take effect at that time. At a subsequent meeting held on the 11th of December a resolution reconsidering the vote by which the nomination of VanBuskirk had been confirmed and by which the resignation of the relator, Whitney, had been accepted was adopted. A question arose by *quo warranto* as to the validity of VanBuskirk's appointment. It was contended that by reason of the reconsideration and rescinding of the vote accepting the resignation of

Whitney and the confirmation of VanBuskirk's appointment Whitney had not resigned and there was no vacancy in the office. It was held that while the matter of the acceptance of the resignation was under consideration the council had a right to reconsider its vote and vote as often as it saw fit on the question, up to the time when on a conclusive vote, accepted as such by itself, a determination was reached; that final determination of a vote of the council may be evidenced by a public promulgation of the result or by any · subsequent action inconsistent with the purpose of further review, and that since the board, after accepting the resignation and confirming the appointment of Whitney's successor, had adjourned, the matter was not in abeyance but a determination thereof had been reached and it was put beyond the power of the board to recall such action by reconsideration at a later meeting, and that the later meeting did not change the state of things existing on the adjournment of the meeting on December 4 or operate to revoke the action taken but that the action of the council at that time was final.

In *Wood* v. *Cutter*, 138 Mass. 149, and *Reed* v. *Barton*, 176 id. 473, it was held that a board of school committees which had voted to elect a school superintendent at one meeting might rescind that vote at an adjourned meeting which was held to be a continuation of the same meeting, the vote to rescind being considered a vote of reconsideration at the same meeting.

In *Keough* v. *Board of Aldermen of Holyoke*, 156 Mass. 403, it was held that where a board of aldermen had by final vote elected a collector of taxes and the meeting had been dissolved, it had no power at a subsequent meeting to declare the last ballot illegal.

In *State* v. *Phillips*, 79 Me. 506, at a meeting of the aldermen of the city of Ellsworth on the 15th of March, 1887, one Blaisdell was declared elected second assessor of taxes and his election was entered of record. The meeting

adjourned and at the next meeting it was voted to reconsider the election of a second assessor, and on a reconsideration and another election the respondent, Phillips, was declared elected. It was there held that while a municipal legislative body has a right to set aside its action before the final election is declared, yet where such election by ballot has been declared and entered of record and the meeting is adjourned there is no authority to reconsider the matter of such election at a later meeting, but that the power of the council has by its previous action and the adjournment of the meeting been exhausted.

In *State* v. *Wadhams,* 67 Minn. 318, an information in *quo warranto* was filed against the respondent, Wadhams, to oust him from the office of assessor for the city of Duluth and to have the relator, Thomas B. Hawkes, admitted to the office. It appears that by the charter of that city the mayor, by and with the advice and consent of the common council, was empowered to appoint an assessor; that on March 12, 1894, he appointed Wadhams, and his appointment was confirmed by the city council. His term was for two years, beginning the first of April and until his successor was elected and qualified. On March 9, 1896, the mayor appointed Hawkes in the place of Wadhams and sent his appointment to the city council. On March 23 following, the appointment of Hawkes was confirmed by vote of the council, and at a subsequent meeting on the 30th of March one of the aldermen, who claimed to have voted under a mistake with the majority, moved to reconsider the vote taken at the meeting of March 23 confirming the appointment of Hawkes, and his motion to reconsider was carried and the motion to confirm Hawkes' appointment was by a vote rejected. No other person appears to have been appointed city assessor. It was in that case held that the power of the city council over the matter had been completely exercised; that all acts necessary to constitute a finality had been done; that the meeting had adjourned,

and the council therefore had no power to reconsider its action at a later meeting.

*Kendall* v. *City Council of Camden,* 47 N. J. L. 64, was a proceeding in *certiorari* to review the proceedings of the city council in regard to the election of one of its members, and the question was whether, having once decided that a member had been regularly elected, the council could at a later meeting reconsider the matter. It was there held that while a deliberative assembly has a right of reconsideration, yet where there is no reconsideration of its action during the session at which the final determination is had, it can not, in the absence of special power conferred upon it, take further. action.

In *Hadley* v. *Mayor of Albany,* 33 N. Y. 603, the city council at one meeting canvassed and declared the result of the election of the mayor and at a later meeting made another canvass with a different result, and the court said that having once legally performed the duty imposed the power of the council was exhausted; that having by the ballot determined who had been elected and having examined and decided the question it could take no further steps to reverse its action at a subsequent meeting. To the same effect is *Morgan* v. *Quackenbush,* 22 Barb. 72.

In *Lantz* v. *Hightstown,* 46 N. J. L. 102, the city council had granted a license and had adjourned its meeting without attempting to reconsider its action. At a later meeting it was sought to rescind the same by reconsideration, and it was held that the council had not the power to do so without such power being conferred on it by the legislature.

Under the decisions here quoted and the general rules relating to powers of deliberative bodies of the character of city councils, we are of the opinion that where such a body has finally voted upon a proposition and no motion for reconsideration or other motion is pending thereon, the city council, upon adjournment of its meeting, has no power to reconsider its action where the rights of other persons

have intervened. In this case, by the final action of the city council rejecting the ordinance for this improvement and the adjournment of that body the ordinance was dead. When an attempt was made to pass it at a subsequent meeting the rights of objectors to this improvement had intervened. Those rights were, to have the matter reconsidered by the board of local improvements and to a hearing before that board in advance of the presentation of its recommendations, upon which a new ordinance must be based. Conditions may have changed and a much stronger showing of objections might have been made before the board of local improvements. The ordinance passed was a new ordinance. The rejection of the ordinance vitiated the whole proceeding. Therefore the ordinance, when passed, was not in pursuance of the preliminary requirements of the statute. The rejection of the ordinance put an end to the proceedings under it. In *City of Chicago* v. *Goodwillie,* 208 Ill. 252, and *Bass* v. *City of Chicago,* 195 id. 109, it was held that the dismissal of a petition for confirmation under an ordinance for a local improvement not only vitiates the ordinance but likewise the entire proceeding, and the city cannot pass a new ordinance without taking the preliminary steps before the board of local improvements required by statute. The reason for that rule applies here.

We are of the opinion, therefore, that the ordinance was void for want of power of the city council to pass it and that it was error to overrule appellees' first objection. Under this view it is not necessary to consider other objections raised, since the petition was dismissed.

The judgment of the court was right though the reason for it was not, and it will be affirmed.

*Judgment affirmed.*