THORNE *v.* SQUIER.

1. MUNICIPAL CORPORATIONS—ADOPTION OF RULES OF PROCEDURE—ORDINANCES.
    Rules of procedure of legislative body do not fall within classification of ordinances and by-laws.

2. SAME—BURDEN OF PROOF—STATUTES.
    Burden of proof is upon those attacking ordinance to show that it never was validly adopted (3 Comp. Laws 1929, § 14180).

3. SAME—PRESUMPTION OF PASSAGE OF RULE OF PROCEDURE.
    Presumption of due passage of rule of procedure by city commission is justified, where it was printed in authorized city manual.

4. SAME—RECONSIDERATION OF VOTE—REGULAR MEETINGS.
    Rule of procedure adopted by city commission providing that reconsideration of vote may not be had after one regular meeting of commission has intervened has reference to regular meetings prescribed by commission pursuant to authority granted by charter, and not to meetings required by charter for purpose of canvassing votes cast at municipal election.

5. SAME—TRANSACTION OF ORDINARY BUSINESS AT CHARTER MEETINGS.
    That at times ordinary business was transacted at meetings required by charter for canvassing votes gave them no standing as regular meetings.

6. SAME—WHEN APPOINTIVE OR ELECTIVE OFFICER MAY NOT BE REMOVED.
    Person duly elected or appointed to office ordinarily may not be removed during his term by subsequent action of body electing him, once all steps requisite to his election or appointment have been completed.

7. SAME—WHEN APPOINTMENT MAY NOT BE RECONSIDERED.
    When final action appointing person to office has been taken, and time for reconsideration has gone by, there may be no reconsideration.

8. SAME—RECONSIDERATION WITHIN PROPER TIME PERMITTED.

    In Michigan reconsideration is permitted, and appointment does not become complete and beyond recall until power to reconsider has been cut off by lapse of time.

9. SAME—RECONSIDERATION OF APPOINTMENT OF CITY CLERK—RULES OF PROCEDURE.

    City commission's appointment of city clerk was not beyond its power to recall, where reconsideration was had at its next regular meeting, as provided for in its rules of procedure, and said power was not affected by fact that meeting for purpose of canvassing votes cast at municipal election, as provided for by charter, had intervened.

    McDONALD, C. J., and WIEST, J., dissenting.

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted April 12, 1933. (Docket No. 103, Calendar No. 36,989.) Decided June 29, 1933.

*Quo warranto* by Thomas H. Thorne against Daniel E. Squier to oust defendant from office of city clerk of Battle Creek. Ouster granted. Affirmed.

*Maxwell B. Allen, Howard W. Cavanagh, Willard A. Knight,* and *Walter P. North,* for plaintiff.

*Bernard J. Onen,* for defendant.

BUTZEL, J. In 1913, the city of Battle Creek adopted a commission form of government, headed by a mayor and four commissioners. It had theretofore been governed by a mayor and common council. On April 5, 1932, immediately following the spring election and prior to the canvassing of the votes, the retiring commission held a regular meeting, at which Daniel E. Squier was elected city clerk for a two-year term by a unanimous vote, notwithstanding Commissioner Hoyt's protest against the exercise of the power of appointment by a body that was about to go out of office. Commissioner

Hoyt also explained that his vote for Mr. Squier was made solely for the purpose of moving for a reconsideration. Immediately following adjournment of the meeting, Mr. Squier accepted the appointment, qualified, and took the oath of office. He has continued to perform the duties of the office ever since.

On April 7, 1932, within 48 hours after the meeting and in accordance with the alleged rules of the commission, Commissioner Hoyt filed and served proper notice in writing that he would move for a reconsideration of Squier's appointment at the next regular meeting of the city commission. On the same day, the city commission held a meeting for the purpose of canvassing the votes at the spring election. Some other business was also transacted, including the approval of the minutes of the previous meeting. Commissioner Hoyt did not attend the meeting of April 7, 1932, but was present at the regular meeting on the following Monday. The personnel of the newly-elected commission consisted of the former mayor, Commissioner Hoyt, another one of the former commissioners, and two new members. Hoyt's written motion to reconsider the appointment of Squier was carried, and Thomas H. Thorne, who had previously and continuously served for many years as city clerk of Battle Creek, was elected for the term of two years. Thorne, claiming that he is the duly-elected city clerk, brought the present proceedings and seeks by *quo warranto* to test the title to the office of the city clerk and to have himself declared entitled to the office. The trial judge found in favor of Thorne, the plaintiff, and Squier, the defendant, appeals. Further facts will be discussed in connection with the points raised on appeal.

The case is companion to that of *North* v. *Wagner, post,* 110, in which a similar action was brought to test the title to the office of city attorney, but no issue is made therein as to the validity of the rule of the commission permitting notice of reconsideration to be given within 48 hours. In the instant case, this rule is attacked on the ground that there was no competent evidence to show that the rule had been properly adopted. It was shown that since at least 1900, the common council and its successor, the commission, had governed itself by certain rules, including the one relating to reconsideration, which were periodically published in a city manual. The rule with regard to reconsideration appeared in the old city council manuals as Rule No. 44, and is Rule No. 28 in the new manual, providing as follows:

"A motion to reconsider a vote on any question shall not be in order after one regular meeting of the commission has intervened between the decision and motion for reconsideration, but it shall be in order for any commissioner of the prevailing side to move for a reconsideration thereof during that period, provided that he shall file with the city clerk within 48 hours of the time at which the motion to be reconsidered was passed, a notice of his intention to so move to reconsider it, and the same number of votes shall be required to reconsider any action of the commission as was required to pass or adopt the same; and provided, further, that no notice for the reconsideration shall be in order or be allowed on any item in any pay roll for labor or service."

In the minutes of January 19, 1920, the city clerk reported that the new city manual was ready for approval by the commission. Prior to that time, on October 20, 1919, he had been authorized to com-

pile and have printed 1,500 manuals. At the meeting of January 19, 1920, it was moved and carried that the standing rules in the manual be held over for one week for consideration. The clerk reported that the remainder of the manual was at his office and could be looked over at any time. On March 8, 1920, it was moved and carried that the manual be adopted as submitted by the clerk, with corrections. The records do not show what corrections, if any, were made. Mr. Thorne, who was clerk at the time, testified that the manuals were not printed until July or August of 1920, and that the corrections were undoubtedly made prior to printing. While there is no testimony as to when or how this specific rule was adopted, it was shown to be one of the rules continuously used since 1900 and included in the printed manuals of the common council and commission. Also persuasive is the fact that the manual was adopted by the commission in 1920 after the standing rules therein contained had been held over for consideration for some time. A printed copy of the manual containing these rules had been kept continuously in the office of the city clerk as a part of the city records.

The old charter of the city, in section 3 of chapter 10, empowered the common council to prescribe rules for the government of its proceedings. Section 5 of chapter 8 of the new charter provides that the commission shall fix the day and hour for regular meetings of the commission and rules and regulations for its government. There is no provision prescribing the manner in which rules should be adopted, but merely a grant of authority to prescribe rules for the government of its proceedings. The minutes of the commission show that Rule No. 28 had been invoked on several occasions.

Appellant contends that there is no showing that the rules were properly adopted in accordance with the provisions of the home rule charter of Battle Creek, stipulating that by-laws and ordinances must be published "for two successive weeks in at least one daily newspaper printed and published in the city, unless otherwise directed," etc. Rules of procedure of a legislative body do not fall within the classification of ordinances and by-laws. 3 Comp. Laws 1929, § 14180, provides as follows:

"All laws, by-laws, regulations, resolutions, and ordinances of the common council, or of the board of trustees of any incorporated city or village in this State may be read in evidence in all courts of justice, * * * either from a record thereof, kept by the clerk or recorder of such city or village, or from a printed copy thereof, purporting to have been published by authority of the common council or board of trustees, in a newspaper published in such city or village, or from any volume of ordinances, purporting to have been printed by authority of the common council or board of trustees of such city or village; and such record, certified copy or volume shall be *prima facie* evidence of the existence and validity of such laws, regulations, resolutions, and ordinances, without proof of the enactment, publishing, or any other thing concerning the same."

Similar statutes have been applied in many cases in other jurisdictions, and it has been held the burden of proof is upon those attacking the ordinance to show that it never was validly adopted. *Chicago & Alton R. Co.* v. *Wilson,* 225 Ill. 50 (80 N. E. 56, 116 Am. St. Rep. 102); *City of Caruthersville* v. *Sickles* (Mo. App.), 247 S. W. 471; *Santa Rosa City R. Co.* v. *Railway Co.,* 112 Cal. 436 (38 Pac. 986). The same reasoning upon which the statute quoted

heretofore is based justifies the application of the presumption of due passage to a rule of procedure printed in an authorized city manual. Also, see *Whitney* v. *Common Council of Village of Hudson,* 69 Mich. 189, 201, a case in which the facts were in no way similar, however. The court held as follows:

"Counsel for defendants insists that strict parliamentary rules should not be applied to these municipal bodies exercising legislative functions; that if they adopt or pursue a method of proceeding understood by themselves, which arrives at substantial results, their action should not be overthrown upon any technical rules or strict construction of parliamentary law. We are of the same opinion."

It is further claimed that, even if the rule in regard to reconsideration is a valid one and its proper adoption be assumed, the appointment of the city clerk could not be reconsidered at a meeting of the commission subsequent to the next regular meeting; that there was a regular meeting on April 7, 1932, and that the reconsideration was not acted upon until the regular meeting of April 11, 1932. Chapter 8, § 5, of the city charter provides that the commission shall fix the day and hour for the regular meetings of the commission. Rule No. 1 of the standing rules provides that the regular meeting of the commission shall be held on Monday of each week at 7:30 p. m. Chapter 6, § 8, of the charter requires the commission to meet at 10:00 a. m. on the Thursday following all municipal elections for the purpose of canvassing the vote, and appellant claims that the meeting of April 7, 1932, called for this purpose, was a regular meeting. It is our opinion that the Monday evening meetings prescribed by Rule No. 1, pursuant to the authority granted by

charter, were the only meetings within the purview of No. 28 of the same rules. The fact that at times ordinary business was transacted at the meetings required by charter for the canvassing of votes gave them no standing as regular meetings.

The serious question in the case is whether there could be a reconsideration of the action taken at the meeting on April 5, 1932, appointing defendant city clerk. No steps were taken until after defendant had taken the oath of office. A person duly elected or appointed to an office ordinarily cannot be removed during his term by subsequent action of the body that has elected him, once all of the steps requisite to his election or appointment have been completed. As was stated in *Marbury* v. *Madison,* 1 Cranch (5 U. S.), 137:

"Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act, required from the person possessing the power, has been performed."

The same is true of an appointment by a legislative body. *Conger* v. *Gilmer,* 32 Cal. 75. There is no question about the correctness of this rule; the difficulty lies in its application, in the determination of the exact time at which the appointment becomes complete and final. The question of the right to reconsider an appointment arose in *Attorney General, ex rel. Dust,* v. *Oakman,* 126 Mich. 717, where we declared:

"The question recurs whether, where an appointment or concurrence in an appointment is a subject of action by a deliberative body, that body may, by rules of its own, or acting under usual parliament-

ary rules, cast a vote upon the subject which is subject to reconsideration; for, if such course is permissible, the appointment is not complete beyond recall until the power to reconsider has been cut off by the lapse of time."

The right to reconsider at the same meeting was recognized, and the rule as laid down has been extended to cases where a reconsideration was made at a later meeting pursuant to rules allowing such reconsideration. See *People, ex rel. McMahon,* v. *Davis,* 284 Ill. 439 (120 N. E. 326, 2 A. L. R. 1650); *Witherspoon* v. *State,* 138 Miss. 310 (103 South. 134); *People, ex rel. Birch,* v. *Mills* (N. Y.), 32 Hun, 459. In *Wood* v. *Cutter,* 138 Mass. 149, Justice Holmes, speaking for the court, said:

"It begs the question to say that the board had once definitively voted in pursuance of the instructions of the town meeting, and therefore was *functus officio,* and could not reconsider its vote. The vote was not definitive if it contained the usual implied condition, that it was not reconsidered in accordance with ordinary parliamentary practice, and it must be taken to have been passed subject to the usual incidents of votes."

See, also, *State* v. *Foster,* 2 Halst. (7 N. J. Law) 101.

In *United States* v. *Smith,* 286 U. S. 6 (52 Sup. Ct. 475), a senate rule provided that, when a nomination was confirmed or rejected, the senate might reconsider its action on the same day of the vote or on either of the next two days of actual executive session of the senate, and that if the notice of confirmation or rejection had already been sent to the president before the expiration of the time for a motion for reconsideration, the motion to reconsider might be accompanied by a motion to request

the president to return such notification to the senate. The rule further provided that nominations confirmed or rejected by the senate should not be returned to the president until the expiration of the time limited to reconsider, or while a motion to reconsider is pending, unless otherwise ordered by the senate. The nomination was confirmed and notification thereof transmitted to the president. The president signed the commission of appointment and a motion to reconsider was thereafter made. It was held that, under the rules, the authorized transmittal of the confirmation before the time for reconsideration had expired empowered the president to complete the appointment with his signature. The case in no way holds that the senate did not have the right to reconsider its confirmation by proper action. The case is not authority for appellant's claim; in fact, the court stated:

"The Constitution commits to the senate the power to make its own rules; and it is not the function of the court to say that another rule would be better. A rule designed to insure due deliberation in the performance of the vital function of advising and consenting to nominations for public office, moreover, should receive from the court the most sympathetic consideration."

*People, ex rel. Birch,* v. *Mills, supra,* resembles the instant case in many respects. The board of supervisors of Westchester county had adopted a rule permitting reconsideration on the same day or the next day following the action sought to be reconsidered. Relator was appointed librarian and janitor, but the following day the action was reconsidered. A few days later one Kinch was appointed to the office. In denying relator's petition for mandamus, the court said:

"The procedure was in entire accordance with the rules, and any appointment would be subject to them. They are a law to the supervisors and to all persons dealing with them. All contracts implied from a resolution are subject to the right to change it by another resolution passed in accordance with the rules of the board; otherwise a minority might bind immutably a majority temporarily absent by a resolution or other enactment. The order should be affirmed, with costs."

Defendant cites as authorities sustaining his position *State, ex rel. Burdick,* v. *Tyrrell,* 158 Wis. 425 (149 N. W. 280); *State, ex rel. Coogan,* v. *Barbour,* 53 Conn. 76 (22 Atl. 686, 55 Am. Rep. 65); *City of Kankakee* v. *Small,* 317 Ill. 55 (147 N. E. 404); *State, ex rel. Whitney,* v. *Van Buskirk,* 11 Vroom (40 N. J. Law), 463; *State* v. *Phillips,* 79 Me. 506 (11 Atl. 274). The factual situations in these cases are in no way like that in the instant case. The opinions do not disclose any rule pursuant to which reconsideration was attempted. There is no question but that, when final action has been taken and the time for reconsideration has gone by, there may not be any reconsideration.

In this State reconsideration is permitted and the appointment does not become complete and beyond recall until the power to reconsider has been cut off by the lapse of time. *Attorney General, ex rel. Dust,* v. *Oakman, supra.*

Considerable stress is laid upon the question whether the commission in making the appointment acted in a legislative capacity. In many respects the commission resembles a board of directors in charge of a private, instead of a municipal, corporation. The commissioners vote upon the various questions presented to them.

In *Attorney General, ex rel. Maybury,* v. *Bolger,* 128 Mich. 355, the court said:

"It has been repeatedly held in other States that the power of appointment to office is not essentially an executive function, and may, therefore, in the absence of constitutional restriction, be vested in departments other than the executive. *State, ex rel. Rosenstock,* v. *Swift,* 11 Nev. 128; *People, ex rel. Dunham,* v. *Morgan,* 90 Ill. 558; *People, ex rel. Waterman,* v. *Freeman,* 80 Cal. 233 (22 Pac. 173, 13 Am. St. Rep. 122); *People, ex rel. Aylett,* v. *Langdon,* 8 Cal. 1, 16; *Mayor, etc., of Baltimore* v. *State, ex rel. Bd. of Police,* 15 Md. 376, 455 (74 Am. Dec. 572); *Fox* v. *McDonald,* 101 Ala. 51 (13 South. 416, 21 L. R. A. 529, 46 Am. St. Rep. 98); *People, ex rel. Brown,* v. *Woodruff,* 32 N. Y. 355, 356; *Biggs* v. *McBride,* 17 Ore. 640, 648 (21 Pac. 878, 5 L. R. A. 115); *State, ex rel. Sherman,* v. *George,* 22 Ore. 142, 151 (29 Pac. 356, 16 L. R. A. 737, 29 Am. St. Rep. 586); *People, ex rel. Grinnell,* v. *Hoffman,* 116 Ill. 587, 601, 617 (5 N. E. 596, 8 N. E. 788, 56 Am. Rep. 793); *State, ex rel. Standish,* v. *Boucher,* 3 N. D. 389 (56 N. W. 142, 21 L. R. A. 539). These cases support the rule laid down by Mr. Justice CHRISTIANCY in the *Hurlbut Case.*"

The court also quoted as follows from the opinion of Mr. Justice CHRISTIANCY in *People* v. *Hurlbut,* 24 Mich. 44 (9 Am. Rep. 103):

"As to this mode of appointment being the exercise of a power essentially executive in its nature, it is sufficient to say that executive power cannot always be defined by any fixed standard in the abstract. What would come within the executive power in our form of government would fall within the legislative in another, and *vice versa.* The question here is whether, under our Constitution, it is executive or legislative; and, as the Constitution has not

confided the appointment of these or the like officers to the executive authorities, and has left it to the legislative discretion whether to create such offices, and how they shall be filled, it cannot be truly said that such an appointment is any more in the nature of the exercise of an executive than of a legislative power."

We believe that the appointment of the defendant was not complete and beyond recall until the power to reconsider had been cut off by the time stipulated in Rule No. 28, that reconsideration was proper, and plaintiff was thereafter elected to the office.

The order of ouster is hereby affirmed, but without costs to either party.

CLARK, POTTER, SHARPE, and FEAD, JJ., concurred with BUTZEL, J.

WIEST, J. (*dissenting*). For the reasons stated by me in *North* v. *Wagner, post,* 110, I dissent.

McDONALD, C. J., concurred with WIEST, J. NORTH, J., did not sit.