WILLIAM A. REED *vs.* SCHOOL COMMITTEE OF DEERFIELD & another.

Franklin. June 21, 1900. — July 18, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Election of Superintendent of Schools at Convention in Union District — Statute — Right of Convention at Adjourned Meeting to rescind Vote by Ballot at Previous Meeting.*

Although St. 1898, c. 466, providing that a certain class of towns may unite in the employment of a superintendent of schools, who is to be elected by ballot in a joint convention of the school committees of the towns comprising the union, intends that the members of the joint committee are to vote individually and not by towns, it cannot be said that a unanimous agreement made in such a convention composed of the school committees of towns, one of which has more members than either of the others, so to apportion the vote as to secure an equal representation for each town, is unlawful.

It is within the power of a joint convention of the school committees of towns uniting in the employment of a superintendent of schools, under St. 1898, c. 466, at an adjourned meeting, to rescind its vote for a superintendent of schools at the previous meeting, although the vote was by ballot, as required by the statute.

PETITION for a writ of mandamus to the school committee of the town of Deerfield, and to Chester M. Barton, commanding them not to interfere with the petitioner in the performance of

his duties as superintendent of schools in the district composed of the towns of Deerfield, Hatfield, and Leverett. Hearing before *Knowlton*, J., who reported the case for the consideration of the full court, in substance as follows.

The towns of Hatfield, Leverett, and Deerfield united for the purpose of employing a superintendent of schools under the provisions of St. 1898, c. 466. The school committees of the towns of Hatfield and Leverett consisted of three members each, and that of the town of Deerfield of three members until the year 1900, when by vote of the town the committee was increased to nine members.

In accordance with an arrangement duly made by the chairmen, the committees of the several towns met at Deerfield in joint convention on April 7, 1900. At this meeting thirteen members of the joint committee were present, three from Hatfield, three from Leverett, and seven from Deerfield. The convention organized by the choice of a chairman and secretary. For the purpose of equalizing the vote of the committee from Deerfield with the votes of the committees of the other towns, it was agreed without objection that the vote of each member present from Deerfield should count for a three-sevenths vote, giving the seven members from Deerfield together three votes, the same as the three members from each of the other towns, it being known that no other members of the committee from Deerfield could attend the convention on that day.

The names of Chester M. Barton and Frank Kennedy were presented as candidates for the office of superintendent of schools for the district. A formal ballot was then taken, and the tellers reported that Barton had received four and five-sevenths votes and Kennedy four and two-sevenths votes. Every member of the convention voted, seven voting for Barton, of whom three were from Hatfield and four from Deerfield, and six voting for Kennedy, of whom three were from Leverett and three from Deerfield.

A controversy arose over the question whether a person should be declared elected who had received only a fractional majority, and the chairman declared that there had been no election, and the meeting adjourned until April 21, 1900.

Barton had been elected and served as superintendent of

schools for the district for five consecutive years prior to 1900, and he continued to serve as such superintendent to the time of filing the petition in this case.

On April 21, 1900, an adjourned meeting of the convention was held, at which fourteen members of the several school committees were present, three from Hatfield, three from Leverett, and eight from Deerfield. It was then voted to rescind the vote at the previous meeting whereby the convention voted to elect a superintendent of schools, seven voting in the affirmative and six in the negative.

The convention then voted to proceed to the election of a superintendent of schools, and it was agreed unanimously that, in voting, each of the members from Hatfield and Leverett should have three votes, and each of those from Deerfield one vote, making possible twenty-seven votes if all were present. Of the Deerfield members eight only were present, making twenty-six votes in the convention.

A formal ballot was taken for superintendent of schools, and the petitioner received twelve votes and Barton eleven votes. The chairman declared the petitioner elected, and no objection was made thereto. Upon this ballot, thirteen votes were cast, seven members of the convention voting for Barton, of whom two were from Hatfield and five from Deerfield, and six voting for the petitioner, of whom three were from Leverett and three from Deerfield, and one member cast a blank ballot.

The petitioner was informed of his election as superintendent of schools, and he accepted the position; and the secretary of the convention subsequently forwarded to him a notification of his election.

On April 26, 1900, the petitioner began the discharge of his duties, but on May 7, 1900, he received a notice from the Deerfield committee that they should recognize Barton as superintendent.

The case was submitted on briefs to all the justices.

*S. D. Conant*, for the respondents.

*D. Malone*, for the petitioner.

HOLMES, C. J. The members of the joint committee provided by St. 1898, c. 466, no doubt are intended to vote individually, and not by towns. At the same time, as town interests

are concerned, it is at least consistent with the statute that the members should be at liberty, by unanimous consent, to secure an equal representation for each town. The number of which a school committee shall consist is left to the will of the town, (Pub. Sts. c. 44, § 21,) and it might be unjust that the representatives of a town with a school committee of nine should count for more on the joint committee than those of another town with a school committee of three.

It is true that the statute requires the superintendent of schools to be chosen by ballot, and that if votes are so far identified as to make it possible to give them different values according to the town from which the voter comes, the secrecy of the ballot, if secrecy is intended, is impaired so far. But the remote implications of the provision for the ballot are at least balanced by the considerations in favor of equality, of which we have spoken.

At the first meeting the equality agreed upon was an equality between the committees actually present. At the adjourned meeting the equality was an equality between the total committees. At the first meeting it was known that the absent members could not be present. Whether this was or was not the fact at the adjourned meeting does not appear. We cannot say that the agreements as to the numerical value of the votes were not both of them lawful and proper.

It follows that the respondent Barton was elected at the first meeting, and should have been declared elected by the chair. The chairman, however, declared that there was no election, and the meeting adjourned.. At the adjourned meeting, (which was a continuation of the same meeting, *Attorney General* v. *Simonds*, 111 Mass. 256, 258,) it was voted " to rescind the vote at the previous meeting whereby the convention voted to elect a superintendent of schools," and this vote is treated by both sides as a rescission of the election, if that was within the power of the meeting.

We are of opinion that it was within the power of the meeting to rescind its vote. The case is like *Wood* v. *Cutter*, 138 Mass. 149, except that here the statute required the voting to be by ballot. But the statute made the same requirement in *Baker* v. *Cushman*, 127 Mass. 105, and the language of Chief

Justice Gray in that case is applicable to this. See also *State* v. *Foster*, 2 Halst. 101. In view of these decisions further discussion is unnecesary.

Upon the facts stated in the report it follows from what we have said that the petitioner is entitled to the office.

*Writ to issue.*