## MAGOWAN *et al.* v. GRONEWEG *et al.*

A mercantile corporation had but two directors, one of whom was also
general manager and secretary, and owned half or more of the stock.
His wife was also a stockholder. The other director was also presi-
dent, and owned one-fifth of the stock. The directors never had a reg-
ular meeting. The sole management of the business was left to the
general manager. He sold the entire stock of merchandise and fix-
tures; his wife being present and apparently assenting thereto, and the
bill of sale being signed by him as secretary and treasurer and by the
president. Comp. Laws, § 4719, provides that "the law neither does
nor requires idle acts." Held, that the fact that the stockholders and

directors did not formally meet and authorize the sale did not render it invalid.

(Opinion filed July 2, 1902)

Appeal from circuit court, Lawrence county. Hon. JOS-EPH B. MOORE, Judge.

This case was first decided by this court in an opinion found in 14 S. D. 543, 86 N. W. 626, in which opinion the judgment of the trial court in favor of defendants was reversed and the case remanded for a new trial.    Subsequently a rehearing was ordered.    This opinion is upon  the rehearing    The former decision is adhered to.

*Moody, Kellar & Moody,* for appellants.
*Martin & Mason,* for respondents.

CORSON, J.    This case was decided at a former term of this court, and is reported in 14 S. D. 543, 86 N. W. 626.    A petition for rehearing was filed, and, as the decision was handed down before the respondent filed any brief, the petition was granted, and the case is now before us for review on such rehearing.

It is strenuously contended on the part of the respondents that as there was no formal meeting of the stockholders or board of directors of the Deadwood Mercantile Company, and no resolution adopted authorizing a sale of the property by De Barry, he had no authority to make a disposal of the entire stock of goods, fixtures, etc., of the corporation to the plaintiff; and the learned counsel for respondents cite many authorities in support of this proposition.    While the doctrine contended for by the respondents is true as a general rule, there is an exception to the same, and, in our view of this case, it comes within the exception.    It may be necessary to a com-

plete understanding of the case that an additional statement of the facts be made; The Deadwood Mercantile Company was organized with a capital stock of $7,000, only $1,000 of which had been actually taken. James DeBarry was a director, secretary and general manager, and owned half or more of the stock actually issued. R. V. Cheney, who owned $200 in value of the stock was president of the company and the only other director, as the third director had resigned, and his place had not been filled. There was evidence tending to prove that Mrs. DeBarry held stock in the company. It further appears that there had been no regular meeting of the board of directors since the organization of the corporation, and that the sole management of the business had been left to DeBarry. As stated in the former opinion, the sale was actually made by DeBarry, but the bill of sale was signed by Cheney, the president, and DeBarry himself as secretary and treasurer. It will thus be seen that the bill of sale was signed not only by the president, secretary and treasurer, but by the two directors also. When DeBarry made the sale, Mrs. DeBarry was present, apparently assenting thereto. In our opinion, the sale, if made in good faith, without the intention to defraud creditors, in which the purchaser participated, or of which he had actual notice, constituted a valid sale. "The law neither does nor requires idle acts." Sec. 4719, Comp. Laws. Certainly it would be requiring idle acts to require the stockholders of this trading corporation, composed substantially of Cheney, DeBarry and Mrs. DeBarry, to meet as stockholders and formally authorize Cheney and DeBarry, the directors, to dispose of the company's property, and also to require Cheney and DeBarry, the two directors, to formally meet as a board, and authorize

themselves, as directors, to transfer the property to the plain-tiffs, when it is clearly shown by the evidence that DeBarry, from the organization of the corporation up to the time of the sale, had the entire management of all the business of the company, and full authority to buy and sell merchandise in the sale of which the company was engaged. The case of Fuel Co. v. Lee, 102 Wis. 426, 78 N. W. 584, decided by the supreme court of Wisconsin, is very analogous to the case at bar. In that case the president of the company sold out substantially all of the personal property of the corporation, but there was no evidence that he was authorized to make the sale by any resolution of the stockholders or directors. It appears by the testimony that the president was the chief managing officer of the corporation, and was intrusted with the management and disposition of its property. It was contended in that as in this case that the purchaser acquired no title to the property, for the reason that the president had not been authorized by a vote of the board of directors to dispose of the same. The supreme court of Wisconsin, in discussing that question, says: "There can be no doubt of the general rule that a president of a corporation, by virtue of his official position, can only sell its assets in the usual and ordinary course of business. But a corporation may, by its acts and methods of conducting its business, so far as third persons are concerned, as effectually clothe its agents with authority to handle, and even to close out, its business, as though a formal vote of record were taken. * * * From the inception of business down to the time of the alleged sale to Lee, Sullivan had been the head and front of the corporation, and had conducted its affairs and handled its business as the chief managing officer. It is in proof that

Lee's proposition to purchase the property in question had been talked over by the board of directors. There can be no doubt but that they were informed of the proposition, and that the matter was considered by them, although no formal record was made of the action taken. This seems to be quite in accord with their usual practices. Sullivan was the moving spirit, and conducted the business and handled the business of the company without any limitation as to his authority from the board." That learned court sustained the title of the purchaser.

We desire to be understood in this case that we express no opinion as to the good faith of the transaction, and that we go no further than to hold that the court was not authorized to direct a verdict; leaving the question of the good faith and the intention of the transaction to be submitted to a jury. We are of the opinion that the court went a little too far in its former opinion in the statement of the case, in using the language, "In good faith, appellant purchased the property, * * * and went into actual, open and notorious possession" of the same, as there seems to be a conflict in the evidence upon these questions.

The judgment appealed from is reversed and a new trial ordered.