STATE OF NEBRASKA EX REL. ERNEST M. JOHNSON, RELATOR, v. BRUCE HAGEMEISTER, RESPONDENT.

73 N. W. 2d 625

Filed December 16, 1955.    No. 33806.

*Charles A. Fisher* and *Ernest M. Johnson*, for relator.

*Clarence S. Beck*, Attorney General, and *Clarence A. H. Meyer*, for respondent.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an original action in quo warranto brought by relator, Ernest M. Johnson, for the purpose of ousting and excluding the respondent, Bruce Hagemeister, from a position of membership on the Board of Education of State Normal Schools of the State of Nebraska and to have the relator adjudged entitled to the position and admitted to the same, with all the rights and privileges thereof.

The relator, on February 10, 1955, requested the Attorney General of the state to bring this action but he refused to do so. Consequently the relator brought it. In view thereof, "He is required to show that his title to the office is better than the incumbent's, and must recover, if at all, upon the strength of his own title and not upon the weakness of the claim of his adversary." State ex rel. Birkhauser v. Moores, 52 Neb. 634, 72 N. W. 1056. See, also, Barrett v. Duff, 114 Kan. 220, 217 P. 918; Wooton v. Wheeler, 149 Ky. 62, 147 S. W. 914.

We accepted original jurisdiction pursuant to and by authority of Article V, section 2, Constitution of Nebraska, which provides, insofar as here material, that: "The supreme court shall have jurisdiction in * * * quo warranto, * * *." See, also, section 24-204, R. R. S.

1943, which provides: "The Supreme Court shall have original jurisdiction in * * * quo warranto * * *." The right to file is provided for by section 25-21,121, R. R. S. 1943.

In 1920 the Board of Education of State Normal Schools was established by the adoption of Article VII, section 13, Constitution of Nebraska. It provided: "The general government of the state normal schools, as now existing, and such other normal schools as may be established by law, shall be vested, under the direction of the Legislature, in a board of seven members to be styled Board of Education of State Normal Schools, six of whom shall be appointed by the Governor, with the advice and consent of the senate, two each for a term of two, four, and six years, and two each biennium thereafter for a term of six years, and the State Superintendent of Public Instruction shall be a member ex-officio." See, also, section 85-301, R. R. S. 1943. We shall hereinafter refer to the Board of Education of State Normal Schools as the board.

The terms of the original members of the board all began on January 1, 1921. See Article XVII, section 1, Constitution of Nebraska, which provides: "The several amendments passed and submitted by this Convention when adopted at the election shall take effect on the first day of January, 1921, * * *." Consequently all subsequent terms of the several members begin on January 1 of odd-numbered years.

In the fall of 1953, during recess of the Legislature, a vacancy occurred in the membership of the board by reason of the death of Edwin D. Crites of Chadron, Nebraska. The term of his membership on the board ran to January 1, 1955.

Article IV, section 11, Constitution of Nebraska, provides: "In case of a vacancy during the recess of the senate, in any office which is not elective, the governor shall make a temporary appointment until the next meeting of the senate, when he shall nominate some

person to fill such office; and any person so nominated, who is confirmed by the senate, (a majority of all the senators elected concurring by voting yeas and nays), shall hold his office during the remainder of the term, and until his successor shall be appointed and qualified."

Then Governor Robert B. Crosby, under and pursuant to the authority granted him, on November 18, 1953, appointed relator to fill the vacancy on the board caused by the death of Crites. Relator took the oath of office and filed it in the office of the Secretary of State on November 30, 1953. He thereafter occupied the office and performed the duties thereof. Subsequently, at its Sixty-sixth (Extraordinary) Session, the Legislature, on April 28, 1954, confirmed relator's appointment to fill the vacancy.

With the term in which the vacancy occurred ending December 31, 1954, with the Legislature meeting in regular session at 12 o'clock noon on January 4, 1955 (see Article III, section 10, Constitution of Nebraska), and with the new Governor not taking office until January 6, 1955 (see Article XVII, section 5, Constitution of Nebraska), the then Governor, Robert B. Crosby, on October 20, 1954, appointed relator to a six-year membership on the board, the term running from January 1, 1955, to January 1, 1961.

On Friday, January 28, 1955, the Sixty-seventh Session of the Legislature, that being its nineteenth legislative day, received a report from its committee on committees reporting favorably on relator's appointment. On the same day his appointment was confirmed by the Legislature. However, on Monday, January 31, 1955, that being its twentieth legislative day, the Legislature adopted a motion made by Senator Bixler to reconsider the action it had taken on Friday, January 28, 1955, confirming the appointment of relator to the board. The Legislature, after taking such action, immediately thereafter adopted another motion made by Senator Bixler that relator not be confirmed. Senator Bixler

had voted for relator's confirmation on January 28, 1955.

Thereafter, on February 2, 1955, Governor Victor Anderson nominated respondent to the term of membership on the board running from January 1, 1955, to January 1, 1961. This nomination the Legislature confirmed on February 28, 1955. Thereafter, on March 2, 1955, the Governor appointed and commissioned respondent who thereupon took the oath of office on March 8, 1955, and filed it in the office of the Secretary of State on March 9, 1955. Respondent is presently occupying the office and performing the duties thereof.

This raises the question, did the Legislature have the right to reconsider its action of Friday, January 28, 1955, confirming the relator's appointment on Monday, January 31, 1955, its next legislative day, no question being raised as to the personal qualifications of either relator or respondent?

We think the appointive power here involved requiring concurrent action of the Governor and the Legislature, although not necessarily in point of time, is executive or administrative in character. As stated in People v. Shawver, 30 Wyo. 366, 222 P. 11: "It is usually held that the senate, in the exercise of its power to consent to or confirm executive appointments, performs an executive or administrative rather than a legislative function." See, also, 22 R. C. L., Public Officers, § 73, p. 424.

"The senate's action, in confirming or rejecting the governor's nominations, is an executive rather than a legislative act." 81 C. J. S., States, § 68, p. 1001.

Article II, section 1, Constitution of Nebraska, provides: "The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted."

While our Constitution thus divides the government of the state into three distinct departments, and prohibits

any person or collection of persons in one department from exercising any power properly belonging to either of the others, however, it expressly recognizes that the provisions in the Constitution transgress this separation and, insofar as they do, the separate departments would have such power. Consequently the Legislature had the power to confirm the appointment although executive or administrative in character.

The Constitution also provides: "* * * the Legislature shall determine the rules of its proceedings * * *." Art. III, § 10, Constitution of Nebraska. It will be observed that this authority does not limit itself to any particular power which the Legislature has or is given but is broad and unlimited in its scope. As stated in Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963: "The constitution expressly provides that 'Each house shall _____ determine the rules of its proceedings;' * * * The provision that each house 'shall determine the rules of its proceedings,' does not restrict the power given to the mere formulation of standing rules, or to the proceedings of the body in ordinary legislative matters; but, in the absence of constitutional restraints, and when exercised by a majority of a constitutional quorum, such authority extends to the determination of the propriety and effect of any action as it is taken by the body as it proceeds in the exercise of any power, in the transaction of any business, or in the performance of any duty conferred upon it by the constitution."

Also as stated in 81 C. J. S., States, § 39, p. 956: "Under provisions of the constitutions of the several states, each house generally has power to determine its rules of procedure, and in such case proceedings in conformity with the legislative rules are valid where not in conflict with the constitution; * * *. The power to determine rules of proceedings is not restricted to proceedings of the body in ordinary legislative matters, but extends to the determination of the propriety and effect of any action taken by the body as it proceeds in the

exercise of any power, in the transaction of any business, or in the performance of any duty conferred on it by the constitution. * * * The power to determine rules of procedure embraces the right to determine as to the reconsideration of action taken, when no provision of the constitution is thereby violated." See, also, Opinion of the Justices, 252 Ala. 205, 40 So. 2d 623; United States v. Smith, 286 U. S. 6, 52 S. Ct. 475, 76 L. Ed. 954.

As stated in Witherspoon v. State ex rel. West, 138 Miss. 310, 103 So. 134: "Counsel for the appellant concede the power of the Senate to 'determine rules of its own proceedings' as to legislative matters, but seek to limit its power so to do in matters of an executive character, but the Constitution, to which alone we should look in this connection, contains no such limitation. How this section of the Constitution can be construed so as to exclude from it the right of the Senate to determine rules of its own proceedings in transacting business of an executive character is not apparent, for the words in which the grant of power to the Senate to adopt rules of procedure is couched are about as broad and comprehensive as the English language contains, and this court is without the right to ingraft any limitation thereon."

We have said of our Constitution:

"The courts should accord to the language of the Constitution the meaning which obviously would be accepted by a layman." Ramsey v. County of Gage, 153 Neb. 24, 43 N. W. 2d 593.

"Where the words of the Constitution are plain, direct, and unambiguous, no interpretation is needed to ascertain their meaning; a mere reading will suffice." Mekota v. State Board of Equalization & Assessment, 146 Neb. 370, 19 N. W. 2d 633.

The rules of procedure adopted by the Sixty-seventh (1955) Session of the Legislature provide: "When a question has been decided, it shall be in order for any member voting with the prevailing side, or not voting, to move a reconsideration thereof; and if the Legislature

shall refuse to reconsider, or upon reconsideration shall affirm its first decision, no further motion to reconsider shall be in order, unless by unanimous consent." Legislative Journal Sixty-seventh Session, p. 2; Legislative Journal Sixty-sixth Session, Rule 10, § 13, p. XXVI.

It will be observed that this section of Rule 10 does not fix the time within which a motion to reconsider may be made, nor does any other section of the rule do so. However, Rule 1 of the rules adopted by the 1955 Legislature to control its proceedings provides: "The rules of parliamentary practice comprised in Gregg's Handbook of Parliamentary Law, Rev. Ed. c. 1940, shall govern the Legislature in all cases to which they are applicable and in which they are not inconsistent with the standing rules of the Legislature." Legislative Journal Sixty-seventh Session, p. 2; Legislative Journal Sixty-sixth Session, Rule 1, p. VIII.

Gregg's Handbook of Parliamentary Law, Rev. Ed. 1940, § VII, p. 36, Motions - To Reconsider, in this regard, provides: "2. It must be made on the same day on which the vote to be reconsidered was taken, or on the next calendar day of the same session."

The action taken by the Legislature was within the time and manner provided by the rules adopted by the Legislature to regulate and control its proceedings.

Relator contends there must be some point of time when there is a finality to an appointment and that when the Legislature confirmed the Governor's appointment on Friday, January 28, 1955, the appointment was complete and beyond recall and the Legislature thereafter could not reconsider what it had done. There are cases cited that so hold although they do not involve any similar or comparable constitutional authority. However, in any event, we do not think we have the right to so limit the power expressly given to the Legislature by the Constitution. A point of time which is final can only be said to have been reached when the constitutional power of appointment has been fully exercised.

The principle here controlling is stated in Witherspoon v. State ex rel. West, *supra,* as follows: "* * * when the Senate confirms an appointment made by the Governor, it is without power thereafter to revoke the confirmation, but under the rules of the Senate which the Constitution authorized it to adopt no vote on the confirmation of an appointment to office is final, and consequently there is no such confirmation until a motion to reconsider an affirmative vote thereon has been disposed of adversely or the time for the making thereof has expired without such a motion being made." The court cited the following cases in support thereof: "Attorney-General v. Oakman, 126 Mich. 717, 86 N. W. 151, 86 Am. St. Rep. 574; People v. Davis, 284 Ill. 439, 120 N. E. 326, 2 A. L. R. 1650; Allen v. Morton, 94 Ark. 405, 127 S. W. 450; Baker v. Cushman, 127 Mass. 105; Putnam v. Langley, 133 Mass. 204; Wood v. Cutter, 138 Mass. 149; Reed v. Deerfield, 176 Mass. 473, 57 N. E. 961; State v. Foster, 7 N. J. Law, 101; Whitney v. Van Buskirk, 40 N. J. Law, 467; Conger v. Gilmer, 32 Cal. 75."

As stated in People ex rel. MacMahon v. Davis, 284 Ill. 439, 120 N. E. 326, 2 A. L. R. 1650: "The question before it is the approval of an executive act of the mayor. Its action is discretionary and deliberative. No good reason is apparent why the council may not establish rules in such cases for the government of its own procedure in arriving at its final judgment as well as in other cases. Orderly procedure requires some rules for the proper dispatch of business and deliberation in its conduct. The confirmation of executive appointments should be deliberately considered, and the rules applicable to ordinary questions to secure such deliberation may well be applied." See, also, Attorney General ex rel. Dust v. Oakman, 126 Mich. 717, 86 N. W. 151, 86 Am. S. R. 574; Thorne v. Squier, 264 Mich. 98, 249 N. W. 497, 89 A. L. R. 126.

Relator's appointment of October 20, 1954, also con-

tained his commission. We think it was proper for the Governor to include it therein since it was his final executive act in regard to the appointment as, upon confirmation of the appointment by the Legislature, the issuance of the commission would be merely ministerial. See McBride v. Osborn, 59 Ariz. 321, 127 P. 2d 134. As stated therein: "* * * this court is committed to the proposition that the governor's power to appoint is in conjunction with the senate and that when the latter has acted favorably upon an appointment made by him, the appointment is final and complete and entitles the appointee to the office. McCall v. Cull, supra (51 Ariz. 237, 75 P. 2d 696); Graham v. Lockhart, supra (53 Ariz. 531, 91 P. 2d 265). We agree with the petitioner that in such a situation the issuance of the commission and the approval of the bond, admittedly sufficient as to amount and sureties, are ministerial acts which could be compelled by mandamus."

However, we do not think, including the commission in the appointment could in any way limit or restrict the Legislature in exercising its constitutional authority in relation thereto. As stated in 16 C. J. S., Constitutional Law, § 169, p. 510: "It is beyond the power of executive or administrative officers or bodies to exercise, question, interfere with, or limit powers conferred on the legislature by the constitution."

The foregoing should not be confused with the procedure provided in Article IV, section 10, Constitution of Nebraska, under which the Governor apparently proceeded in nominating respondent. Article IV, section 10, Constitution of Nebraska, provides: "The governor shall nominate and by and with the advice and consent of the senate, (expressed by a majority of all senators elected, voting by yeas and nays,) appoint all officers whose offices are established by the constitution, or which may be created by law, and whose appointment, or election is not otherwise by law or herein provided for; and no such officer shall be appointed or elected by the

legislature." This constitutional provision contemplates a nomination, confirmation by the Legislature, and pursuant thereto, appointment by the Governor. In such instances the appointment, which would include the commission, is the third and final act in the appointive procedure. See Marbury v. Madison, 1 Cranch 137, 2 L. Ed 60; Harrington v. Pardee, 1 Cal. App. 278, 82 P. 83. As stated in Harrington v. Pardee, *supra:* "As to the trustees of this home, the governor cannot appoint when the senate is in session without the 'advice and consent' of that body. In all such appointments the first step to be taken is the suggestion by the governor to the senate of the name of a person for the office and to ask the advice of the senate, and for its consent for him to appoint such person; the second step is the advice and consent of the senate which is manifested by a resolution certified to the governor and to the secretary of state, and the third and last step is the issuing of the commission signed by the governor, and this is the evidence of such appointment. * * * The appointment is not made until the commission is issued, and issuing the same is the last act, and in issuing the commission of the governor is performing an executive, and not a ministerial act, and is, therefore, acting under his discretionary powers, * * *."

Relator served as a member of the board on Saturday, January 29, 1955. This fact would not alter the situation because, in any event, he would serve until his successor was appointed and qualified. See, Art. IV, § 11, Constitution of Nebraska; § 32-1045, R. R. S. 1943. Relator did not seek to qualify for the six-year term from January 1, 1955, to January 1, 1961, until February 9, 1955, when he took the oath of office and thereafter, on February 11, 1955, filed it with the Secretary of State. In any event we think what was said in People ex rel. MacMahon v. Davis, *supra,* applies. Therein the court held: "The action of the appellees in assuming the offices the next day, while the question of the confirma-

tion of their appointment was pending in the council, and in afterward exercising the powers and duties of the offices, did not have the effect of giving them any title to the offices. The effect of the motion to reconsider the vote to concur in the appointments was to suspend all action based upon that vote until the reconsideration was acted upon. The vote to reconsider at the meeting of June 22 was an annulment of the previous vote, and the subsequent vote was effectual to disapprove the appointments."

Relator cites and seems to rely on United States v. Smith, *supra.* Therein the United States Supreme Court fully recognized the Senate's right to reconsider its confirmation of any nomination made by the President. However, in view of the fact that the resolution of confirmation had been delivered to the President pursuant to act of the Senate taken in accordance with its own rules, the fact that the President had acted thereon and issued the commission before the Senate sought to recall the resolution of confirmation for the purpose of reconsidering the question of its confirming such nomination; the fact that the nominee had accepted the appointment, received his commission, and occupied the position and performed the duties thereof; and the fact that the Senate had, in the past in similar situations, acquiesced in the presidential refusal to return a resolution of confirmation under similar circumstances, the court denied the Senate's right to insist upon its return. No such factual situation exists here. In fact the case is full authority for the right of the Legislature to reconsider the confirmation in this case for the Senate's rule was based on the following provision of the federal Constitution: "Each House may determine the Rules of its Proceedings * * *." Art. I, § 5, Constitution of the United States. The question raised in regard to the rules adopted by the Senate thereunder was stated in the opinion as follows: "The question primarily at issue

relates to the construction of the applicable rules, not to their constitutionality."

As stated in Thorne v. Squier, *supra:* "In United States v. Smith, 286 U. S. 6 (52 Sup. Ct. 475) * * * The case in no way holds that the senate did not have the right to reconsider its confirmation by proper action. The case is not authority for appellant's claim; in fact, the court stated: 'The Constitution commits to the senate the power to make is own rules; and it is not the function of the court to say that another rule would be better. A rule designed to insure due deliberation in the performance of the vital function of advising and consenting to nominations for public office, moreover, should receive from the court the most sympathetic consideration.' "

In view of what we have said it would appear that relator was holding over under his appointment to fill vacancy and that after respondent had been appointed and qualified relator no longer had any right to the office. Consequently the relief which he herein seeks should be denied.

WRIT DENIED.