BURKE, et al., Plaintiffs v. SCHMIDT, et al., Defendants

(191 N.W. 2d 281)

(File No. 11001. Opinion filed October 27, 1971)

David A. Gerdes, Pierre, argued the cause for plaintiffs. Martens, Goldsmith, May, Porter & Adam, Pierre, on the briefs.

**Steven L. Jorgensen,** Sioux Falls, argued the cause for defendants. **Willy, Pruitt, Matthews & Jorgensen,** Sioux Falls, on the briefs.

**William J. Srstka,** Asst. Atty. Gen., Pierre, argued the cause and filed a brief on behalf of Gordon J. Mydland, Atty. Gen., as amicus curiae.

## ORIGINAL ACTION

BIEGELMEIER, Presiding Judge.

This is an original action in the nature of quo warranto to determine the rights of two members of the Board of Regents.[1] From the stipulated facts it appears plaintiffs were appointed members of the State Board of Regents by Governor Nils A. Boe after his inauguration January 5, 1965. Plaintiff Burke filed his oath of office on January 13, 1965, and plaintiff Witt on January 15, 1965. Their predecessors having ceased to act, plaintiffs attended Board meetings and acted as Regents at four meetings prior to February 9th when they were confirmed by the Senate on February 9, 1965. On previous occasions since 1950 Regents commenced their duties after filing their oaths and before Senate confirmation; however, in none of those instances was that conduct disputed.

By a letter to the Secretary of State dated December 30, 1970, Governor Farrar informed her he had appointed defendant Schmidt as a member of the Board to succeed plaintiff Burke and by similar letter dated January 2, 1971, that he had appointed defendant Varilek as such member to succeed plaintiff Witt. The letters, which the Secretary of State received January 2, 1971, authorized her to issue commissions accordingly. Their oaths of office were also filed with her on January 2, 1971. The letters, signed by the Governor, and the certificates, signed by the Governor and the Secretary of State on the date last mentioned, stated the appointments were to be effective January 1, 1971,

---

1. SDCL 21-28.

and continue for six years until January 1, 1977, or until their successors shall have qualified, "subject to confirmation of the State Senate."

On November 3, 1970, Richard F. Kneip was elected Governor, and on Tuesday, January 5, 1971, at 12 o'clock m. he took the constitutional oath of office as Governor.[2]

On January 11, 1971, Governor Kneip signed and filed with the Secretary of State two letters in which he stated he was withdrawing the "recommended" appointments of defendants Schmidt and Varilek as members of the Board of Regents.

Except for sessions called on extraordinary occasions (Art. IV, § 4, not applicable here), legislative sessions are provided for in Art. III, § 7, S.D.Const., as follows:

"The Legislature shall meet at the seat of government on the first Tuesday after the first Monday of January at 12 o'clock m. in the year 1963 and in the year 1964 and each even-numbered year thereafter, and on the first Tuesday after the third Monday of January at 12 o'clock m. in the year 1965 and each odd-numbered year thereafter, and at no other time except as provided by this Constitution."

Pursuant thereto the Senate met on January 19, 1971, for its first session. After showing certificates by the Secretary of State of the filing of oaths of senators-elect and other constitutional officers, the Senate Journal shows another certificate dated January 19, 1971, which includes copies of the letters of Governor

---

2. SDCL 3-1-2 provides i n part, "all state * * * officers shall qualify and enter upon the duties of their office on the first Monday of January succeeding their election or within twenty days thereafter." In 1971 the first Monday was January 4, 1971. SDCL 3-1-5 requires: "Every person elected or appointed to any civil office * * * shall, before entering upon the duties thereof, qualify by taking an oath or affirmation to support the Constitution of the United States and of this state, and faithfully to discharge the duties of his office, naming it". It may be of interest as to the effect these sections have on constitutional provisions. Article IV, § 1, fixes the term of the Governor at two years, and Article XXVI, § 19, provides the first Governor elected in 1889 shall hold office until the first Tuesday after the first Monday in January 1891 at 12 m. or until his successor is elected and qualified.

Farrar relating to the appointments of defendants.[3] The original letters were addressed solely to the Secretary of State; the Senate Journal shows letters addressed to the President and members of the Senate. These appointments were confirmed in executive session the same day. The Secretary of State did not include in her certificate copies of the January 11, 1971 letters of Governor Kneip withdrawing the Farrar appointments of defendants nor mention that such letters had been filed in her office.

■ The office of the Governor is a continuing one, irrespective of the person who occupies it, and a succeeding Governor has the same power over an appointment as the predecessor Governor would have had if he continued in office. State ex rel. Kriebs v. Halladay, 52 S.D. 497, 219 N.W. 125. This seems to be the general rule. Annot. 89 A.L.R. 132 at 136 et seq. Therefore, we may approach this question as if Governor Farrar had made the withdrawal.

Relevant provisions of our Constitution and statutes applicable to Regents are next set out. Article XIV, § 3 of the South Dakota Constitution provides:

"educational institutions that may be sustained either wholly or in part by the state shall be under the control of a board of five members appointed by the Governor and confirmed by the senate under such rules and restrictions as the Legislature shall provide. The Legislature may increase the number of members to nine."

SDCL 13-49-1 states:

"The control of the public, post-secondary educational institutions of the state * * * shall be vested in a board of seven members, designated as the board of regents. The board members shall be appointed by the Governor, by and with the consent of the senate."

---

3. It certifies to copies of letters of appointment of defendants. They are not exact copies of the letters of Governor Farrar which are part of the Stipulation of facts. The Senate Journal then shows that before election of any officers some permanent rules of the Senate were adopted which changed prior rules, including those with reference to confirmation by the Senate.

SDCL 13-49-3 reads:

> "The term of office of each regent shall be for six years from and after the first day of January immediately preceding his appointment and confirmation, and until his successor is duly qualified, unless sooner removed. The expiration of all terms shall occur on the first day of January of each odd-numbered year   \*   \*   \*."

There is some divergence of opinion respecting the right of an appointing executive to withdraw or recall appointments made by him which are subject to subsequent approval by a legislative body. These two views were discussed by the court in McBride v. Osborn, 1942, 59 Ariz. 321, 127 P.2d 134, where it wrote:

> "The governor cancelled the appointment of petitioner and withdrew his name from the senate upon the theory that he had the right to do so any time before action by that body, while the petitioner's position is that by appointing him and submitting his name to the senate for confirmation, the governor exhausted his power in that respect and could do nothing more concerning it unless and until it was rejected by that body. Several decisions are cited by petitioner in support of this proposition (citing cases). An examination of these authorities, however, and others of the same tenor, discloses that the appointment in each case had the effect of vesting the appointee with the office, and it is clear that to have held the governor, or other appointing power, could cancel an appointment and withdraw the name of appointee from the consideration of the senate, would have given the governor, or other appointing power, the right to remove from office when that right did not exist under the law, except after a hearing and for cause. If appointment by the governor had had the effect of placing petitioner in the office of industrial commissioner and authorizing him to perform its functions, there could be no question but that the proposition that the governor

had exhausted his power in making the appointment and could not withdraw it would apply. But we are unable to see wherein this could have any application at all where the appointment does not have the effect of vesting the appointee with the office.

\* \* \* And this is true, whether sending the name to the senate for confirmation be treated merely as a nomination or as an appointment, because in neither instance would the act of the governor alone entitle his appointee to the office. The approval of the senate is just as necessary as the action of the executive to complete the appointment and give the appointee any right whatever to take over the office and discharge its duties."

It is sometimes claimed, as defendants here claim, that if the action of the Governor is deemed an "appointment" the Governor may not withdraw it, but if it is a "nomination" the Governor may withdraw it. We do not believe the nomenclature[4] used ought to be that test, but rather whether the action of the executive is final and complete and places the appointee in office without further action.[5] Our court in State ex rel. Kriebs v. Halladay, 52 S.D. 497, 219 N.W. 125, embraced that view when it wrote:

"In this case the appointment of Halladay remained in force[6] until it was acted upon by the Senate. On January 7th, while it was still in force, the Senate confirmed it. The **appointment thereupon became complete,** Halladay qualified \* \* \* ". (Emphasis supplied)

---

4. Art. XIV, § 3, S.D.Const., SDCL 13-49-1 and 13-49-3 use the words appointed or appointment, while SDCL 13-49-5 uses the word nominate in describing the act, as did the original 1897 Session Law, Ch. 58, § 3, while § 2 thereof used the term nomination. From Senate Journals it appears Governors used the term nominate up to 1965 and the term appoint thereafter. The use of both of these terms is persuasive that some reason other than the nomenclature used should be the basis of decision — our conclusion of finality therefore is preferable and we conclude sound.

5. Many appointments fall in this category. Illustrative of these are vacancies in offices of the District County, Circuit and Supreme Courts, SDCL 3-4-3 and Art. V, § 37, S.D.Const.; and in the Legislature, Art. III, § 10.

6. This means only that it remained in force as an appointment upon which the Senate is authorized to act.

■ We have not overlooked that part of SDCL 13-49-3, supra, which fixes the term of office of a Regent as six years from and after the first day of January immediately preceding his appointment and confirmation and until his successor is duly qualified, which defendants contend indicates their appointments vested them with the office of Regents. It clearly was a practical decision to fix the time a Regent's appointment terminated by setting a date from which the six-year term would commence. As is apparent, six years could not elapse as a later than January 1st confirmation would always shorten it. It is not necessary to determine in this proceeding when the appointee becomes clothed with de facto authority of a Regent so as to bind the Board or the State as to contracts made within its powers, though it seems logical the Regent whose six-year term may have expired is authorized to act as such until his successor has "duly qualified". The Governor may withhold a new appointment until the first day of February of the odd-numbered year (SDCL 13-49-3) and up to that time the former Regent may act as such. It would also seem logical that he could do so until the new appointee, if any, was confirmed by the Senate and then took the oath as such and became vested with the office of Regent, and, if by oversight or some other reason, no appointments were made or, if made and not confirmed, those members whose "terms" had expired would remain in office.

Our conclusion is further supported by the wording of SDCL 13-49-4 which provides in case a member of the Board shall die, resign, remove from the state, etc., the Governor shall fill the vacancy by suitable and prompt appointment, with the specific clause that **"such appointee shall be clothed with full authority as a regent,** but this term of service shall expire with the next legislative session, unless sooner confirmed by the senate." The portion of this clause which we have emphasized does not appear in any of the statutes with reference to the appointments now before the court. The addition of this special clause indicates it was deemed necessary to invest this authority in the appointee in place of the cloak of confirmation.

In re Advisory Opinion to Governor, 1971, Fla., 247 So.2d 428, concludes the Governor may recall an appointment prior to confirmation by the Senate, as

> "the only appointments over which the Senate has confirmation jurisdiction are those submitted by you and those made by your predecessor and not recalled by you. Upon your recalling any of the appointments the confirmation jurisdiction of the Senate ceases".

As indicated above, the courts are divided on this question, McChesney v. Sampson, 232 Ky. 395, 23 S.W.2d 584, holding the Governor could not withdraw the appointment for the reason it concluded the appointee was fully placed in office by the appointment. See also State ex rel. Todd v. Essling, 1964, 268 Minn. 151, 128 N.W.2d 307; State ex rel. Johnson v. Hagemeister, 161 Neb. 475, 73 N.W.2d 625, which quoted from McBride v. Osborn, supra, that " 'when the (Senate) has acted favorably * * * the appointment is final and complete' "; State ex rel. Reynolds v. Smith, 22 Wis.2d 516, 126 N.W.2d 215, and Thorne v. Squier, 264 Mich. 98, 249 N.W. 497, 89 A.L.R. 126 with Annot. at 132.

Defendants claim that it is the duty of the Governor, not the Secretary of State, to communicate appointments to the Senate; that Governor Farrar officially transmitted defendants' appointments to the "Legislature" and Governor Kneip did not formally notify the Senate of the withdrawal. The record is that Governor Farrar read a message and Governor Kneip took the oath of office as Governor in the Rotunda of the Capitol Building all on January 5, 1971, at 12 m. Whether former Governor Farrar was then Governor may be uncertain,[7] but, passing that question, neither the message[8] nor defendants' appointments were then

---

7. On November 6, 1970, Governor-elect Kneip took oath as Governor, which oath was filed with the Secretary of State on November 9, 1970.

8. Our search has found the following mention of messages by the Governor to the Legislature:
Art. IV, § 4, S.D.Const., directs that "The Governor * * * shall, at the commencement of each session, communicate to the Legislature by message, information of the condition of the state, and shall recommend such measures as he shall deem expedient."
Art. IV, §§ 9 and 10 of our Constitution outlines the procedure for the Governor to approve a bill passed by the Legislature or object to it and refuse or fail to sign it or some part of it.
SDCL 4-7-12 states "the outgoing Governor shall deliver the budget report to the Legislature with his message * * *."
SDCL 3-8-1.10 provides "The Governor may include, in the budget next transmitted by him to the Legislature * * * his own recommendations with respect to the rates of pay which he deems advisable," etc.

formally read or "officially" given to the Senate, as defendants claim, until January 19, 1971. This was the first date the Senate could legally meet. Art. III, § 7, S.D.Const., supra.

■ Before that, on January 11, 1971, Governor Kneip had officially withdrawn the defendants' appointments by filing letters to that effect with the Secretary of State. That is the place appointments are required to be filed. SDCL 3-4-6 and 1-8-1.[9] As the Legislature was not in session until January 19, 1971, the office of the Secretary of State was the only place to file any of the appointments. We are therefore concerned with an appointment made prior to the time it was forwarded to the Senate. At the time the Secretary of State forwarded the Governor Farrar appointments to the Senate the Kneip withdrawals were in the same official files as the Farrar appointments. If it was her duty to forward the message and appointments to the Senate, it was her duty to forward all of the official communications pertaining to the appointments. Her duty was an administrative one and she was not authorized to make a decision as to their legal effect. See State ex rel. Coon v. Morrison, 61 S.D. 339, 249 N.W. 318. This apparent oversight cannot result in the award of office to one person over that of another claimant. The Senate could take official notice of the facts relative to the appointments of persons to an office requiring its confirmation, State ex rel. Kriebs v. Halladay, supra, and were bound to take notice of the complete official record thereof.

■ Claim is made plaintiffs are chargeable with laches and unreasonable delay in commencing their action; that they are estopped from asserting their cause of action and have

---

9. SDCL 1-8-1: "It is the duty of the secretary of state:

(1) To keep a register of official acts of the Governor to which attestation over his signature and the great seal is required;

(2) To affix the great seal, with his attestation, to all commissions, pardons, and other public instruments to which the signature of the Governor is required * * *.

(4) To receive, file, and keep on file any document * * * which the law requires to be filed in his office."

In addition to the letters appointing defendants as Regents, the Governor signed and the Secretary of State attested and affixed the seal of the State to "commissions" as Regents issued to defendants.

abandoned their right to the offices. The evidence shows plaintiffs appeared at one or more meetings of the Regents in January and February 1971, and made statements they were there "to continue (their) membership on the Board". The Board, however, refused to recognize them as such and voted to seat defendants as members at one meeting and refused to reconsider its action at a later meeting. That record is the reverse of abandonment, as plaintiffs affirmatively asserted their rights as members. It was not necessary that they continue to attend every meeting in view of the two votes and one member's statement the "issue is dead." No grounds for estoppel appear nor do we view there was unreasonable delay or laches.

The questions of vacancies and of the right of plaintiffs to remain in office until their successors are duly qualified requires discussion of SDCL 13-49-5. That section provides:

> "The Governor shall not have power to fill any vacancies caused by the refusal of the senate to confirm, nor vacancies caused by his own neglect to nominate to the senate in time for confirmation."

The Senate did not refuse to confirm the appointments it considered; it voted to confirm them, though as we conclude defendants' appointments had previously been withdrawn; therefore, that phrase does not apply to the situation here presented. Nor were the vacancies caused by Governor Kneip's neglect to nominate to the Senate within the "time for confirmation" as SDCL 13-49-3 allowed the Governor until February 1, 1971, to make the appointments and the Senate had on January 19, 1971, the first day of its session, confirmed defendants' appointments. It would have been an idle act for the Governor to have called on the Senate to confirm the appointments or nominations of plaintiffs as it had confirmed others for the offices involved. It is a maxim the law does not require idle acts. Magowan v. Groneweg, 16 S.D. 29, 91 N.W. 335.

■  A judgment will be entered declaring plaintiffs are entitled to be seated as members of the Board to hold office until their successors shall be appointed, confirmed by the Senate and duly qualified.

HANSON and WOLLMAN, JJ., concur.

WINANS, J., dissents.

WINANS, Judge (dissenting).

I am in dissent. The reason for my dissent will be as tersely stated as I know how to write. The Governor of this state upon the expiration of the terms of appointment of the plaintiffs to the Board of Regents, except for their holdover rights, appointed each of the defendants to the Board of Regents for a term of six years, such term to be effective January 1, 1971 and to continue until January 1, 1977 or until their successors were appointed and qualified, subject to the confirmation of the state Senate. All of the appointive procedures provided for by the laws of this state and the Constitution were explicitly followed without any deviation. Each of the defendants took the oath of office required by statute which oaths were properly filed as required by law. The appointments were confirmed by the Senate, also an act provided for by law. After the appointments and the filing of the oaths and before the confirmation the Governor attempted by a letter addressed to the Secretary of State to withdraw the appointments which act is nowhere authorized by any law, statute or constitution of this state. When the Governor exercised his power of appointment and the defendants by filing their oaths accepted the appointments, the appointive act was complete, and as provided by law they took their offices. The only authority that could terminate their right to these offices was the Senate. They saw fit to confirm the appointments.

State ex rel. Kriebs v. Halladay, 52 S.D. 497, 219 N.W. 125, cited in the majority opinion, is not authority for the position taken

by the majority opinion. Even the very quote as shown in the opinion admits that the appointment of Halladay remained in force until it was acted on by the Senate. The Halladay case does not hold the appointment could be revoked, once made, and after the oath had been properly taken and filed. Halladay's appointment was confirmed by the Senate and the appointment became complete.

I quote introductory comments to the annotations found in 89 A.L.R. 135, as follows:

"At first sight, it would seem entirely reasonable and in accord with public policy to allow the appointive power the privilege of reconsideration. From the point of view of the one appointed to the office, however, to permit such reconsideration, after the power of appointment has been completely and finally exercised in the manner prescribed by law and the title to the office has become fixed, is to take from him a vested right. Also, from the point of view of stability and certainty in the administration of public affairs, it is desirable that there should be some point of time at which an appointment to office becomes finally and irrevocably fixed. As said in the famous case of Marbury v. Madison (1803) 1 Cranch (U.S.) 137, 2 L.Ed. 60: 'Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised.'

Although there are circumstances under which an appointment to office may be reconsidered and revoked, it may be stated as a general rule that an appointment once made is irrevocable and not subject to reconsideration. This view represents the great weight of authority."

1 and 2 from the Syllabus of Barrett v. Duff fully supported by the text, 1923, 114 Kan. 220, 217 P. 918, states:

"1. * * * The executive power of the Governor is a continuing power, never ending, and not broken by succession.

2. * * * Where the appointment to an office is vested in the Governor, with the advice and consent of the Senate, and the term of the incumbent expires during a recess of the Legislature, and the Governor appoints a successor to the office, **held,** that the appointment vests in the appointee a right to hold for his full term, subject only to be defeated by nonconcurrence or rejection of the Senate."

In State ex rel. Todd v. Essling, 1964, 268 Minn. 151, 128 N.W.2d 307, at page 311, it is stated,

"It appears well settled since Marbury v. Madison, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60, that with respect to an office having a fixed term where the appointee is not removable at will, when the executive power of appointment has been completely exercised, the authority of the executive to remove or rescind the appointment ceases. This rule is founded upon the principle that where the appointing authority has done everything he is required to do to make a valid and complete appointment, he has fully exercised and exhausted his power over the appointee and a recall of the appointment would operate as a removal from office in violation of the appointee's right to continue in office subject only to a rejection by the senate or removal for cause."

Other authority can be given for the position I take but inasmuch as this is only a dissent and the law will become fixed and determined as stated by the majority, I refrain from further comment.

There is another statement in the majority opinion on which I must comment briefly. The majority opinion, after quoting SDCL 13-49-5 and 13-49-3, states: "It would have been an

idle act for the Governor to have called on the Senate to confirm the appointments or nominations of plaintiffs as it had confirmed others for the offices involved." The opinion, however, holds this confirmation was not valid because the Governor had exercised what the opinion holds was his right of withdrawal of the appointments of the defendants prior to the act of confirmation. It seems to me under the majority holding the Governor had a right to submit to the Senate for confirmation such appointments as he desired and withdraw them and resubmit all before the act of confirmation. Under my theory which holds the Senate had the right to confirm, as the Governor had no right to withdraw the appointments once made, it would have been an idle act for him to submit appointments. Furthermore, under the majority opinion herein the Governor could have created a vacancy any time he wished, as is plainly shown by the stipulation of facts before this Court to the following effect:

> "That in the event Burke and Witt were called to testify before a referee, they would testify that on or about January 11, 1971, at the request of Governor Kneip, they conferred with the Governor in his office at the State Capitol, that they were advised by the Governor that he was withdrawing the appointments of Schmidt and Varilek, and he wanted Burke and Witt to continue to serve as Regents, that he could not assure them how long he wished them to serve but he wished them to serve for at least one year until the Master Plan, then under consideration by the Board, had been determined, and that in accord with his practice with department heads that they leave letters of resignation, annexed hereto as Exhibits S and T, with the Governor, they so did."

I would hold that the defendants, Schmidt and Varilek, are the duly appointed, qualified, confirmed and legally acting members of the Board of Regents from January 2, 1971, the date they qualified.