STEVEN L. ZINTER, Supreme Court Justice.
[¶ 20.] I agree with the majority’s opinion regarding the acts necessary to establish voting residency. See supra note 4. With respect to the time of establishing residency, three constitutional provisions control. South Dakota Constitution article V, § 2 requires that justices be “selected from compact districts established by the *444 legislature.” (Emphasis added.) Article V, § 6 requires justices to have voting residency “within the district ... from which they are ... appointed.” (Emphasis added.) And Article V, § 7 requires that Supreme Court vacancies “shall be filled by appointment of the Governor[.]” (Emphasis added.) Because the Governor’s selection of justices must be “from compact districts,” and because the selection must be by “appointment,” I conclude that voting residency must be established at the time of the appointment; that is, at the time the Governor’s appointment becomes final by its filing in the office of the Secretary of State.
[¶ 21.] As the majority opinion notes, there was disagreement among the members of the 1972 Constitutional Revision Commission whether Supreme Court justices should be selected from districts or from the State at large. See supra ¶ 10. The disagreement was resolved by the 1972 language in Article V, § 2 retaining the requirement that “[a]ll justices shall be selected from compact districts ... and each district shall have one justice.” The 1972 revision further requires that the Governor’s selection be a voting resident within the district from which they are “appointed.” S.D. Const, art. V, § 6.
[¶ 22.] Our interpretation of these provisions should not render the words “appointed” and “from compact districts” meaningless. In our prior decision on the time for establishing residency for judicial office, we noted that “[n]o wordage should be found to be surplus. No provision can be left without meaning. If possible, effect should be given to every part and every word.” Cummings v. Mickelson, 495 N.W.2d 493, 500 (S.D.1993) (Gilbertson, Cir. J., plurality) (internal citations omitted). To give meaning to the words “appointed,” “from compact districts,” and a “voting residente ] within the district,” the person appointed by the Governor must have established voting residency in the vacant district at the time of the appointment.
[¶ 23.] “SDCL 3-4-6 sets forth the requirements for [gubernatorial] appointments. They must be in writing and filed with the Secretary of State.” Id. at 496 n. 3. “Appointments are complete when the appropriate certificate of appointment is filed with the Secretary of State.” Id. at 504 (Steele, Cir. J., concurring in result). See also Burke v. Schmidt, 86 S.D. 71, 80, 191 N.W.2d 281, 286 (1971) (stating that the office of the Secretary of State “is the place appointments are required to be filed”). Because filing the appointment with the Secretary of State is the last executive act necessary to effectuate an appointment, residency must be established in the district by the time the written appointment is filed.
[¶ 24.] I disagree with today’s majority opinion adopting the writing of two Justices in Cummings, 495 N.W.2d 493 (Gil-bertson, Cir. J.; Miller, C.J.) (concluding that residency must be established at the time the candidate qualifies for office by taking the requisite oath rather than the time of appointment). See supra ¶¶ 12, 17. The Constitution speaks only in terms of the Governor’s selection by appointment, and there is a clear difference between the Governor’s act of appointment to an office and a candidate’s subsequent act of qualifying for that office (the oath). The Legislature has recognized that these acts are different and that each act occurs at a different time: “Persons appointed to offices ... shall qualify in the same manner as is required of those elected, the time of which shall be prescribed in their appointment.” SDCL 3-4-7.
[¶ 25.] Nevertheless, the majority eschews the word appointment in favor of the word qualification. The majority concludes that a person may be appointed from a district other than the one in which *445 the vacancy exists as long as the person establishes residency prior to “assuming office”; i.e. “prior to taking the oath of office which vests them with the office of justice.” See supra ¶¶ 12, 17. There is, however, no constitutional language referring to residency at the time of oath, qualification, or assumption of office. The Constitution requires residency within districts and the Governor’s selection of persons by “appointment” from districts. S.D. Const, art. V, §§ 2, 6 and 7. The majority’s view, that the residency requirement only applies when a person already appointed later assumes office, renders the words selection “from” districts by “appointment” meaningless.[7]
[¶ 26.] Moreover, because Article V, § 6 governs both appointments and elections, under the majority’s view, persons now seeking election for circuit judgeships will no longer have to become a voting resident of the circuit at the time of an election. This will permit lawyers and judges in one circuit to run for circuit judgeships in other circuits without ever becoming a voting resident, unless they are fortunate enough to defeat the resident judge in the election. In adopting the 1972 amendments, the voters could not have intended the majority’s view. Judge Steele’s controlling opinion in Cummings (requiring residency at the time of appointment or election) should continue to control the time of residency question. 495 N.W.2d at 502-04 (Steele, Cir. J., concurring in result). Only that opinion reconciles all of the 1972 constitutional revisions. See id. at 504 (“reconciling] all of the new provisions with the old [to] have the effect of treating judicial candidates and appointees equally in terms of residency requirements”).

. The majority essentially concedes that the word “appointment” from districts is meaningless when it acknowledges that under its view, the triggering event for residency is when the "Governor's appointee " (a person already appointed) ultimately becomes a justice. See supra ¶ 18 (emphasis added). Further, since the oath can only be taken after appointment, it is difficult to understand how the majority can conclude that "[e]stablishing voting residency in the district prior to taking the oath also establishes selection [ (appointment) ] from the district.” See id.
The majority suggests the failure to adopt a 1970 Constitutional Revision Commission draft indicates that the 1972 final version eliminated any requirement that the applicant be a resident of the district "when appointed or elected.” See supra note 6. The Commission minutes do not reflect why that draft was proposed or why it was not adopted. But more importantly, the Court’s suggestion is inconsistent with the final language requiring that justices have voting residency in the district from which they are "appointed,” that justices be "selected from compact districts,” and that the Governor make that selection by "appointment.” S.D. Const, art. V, §§ 2, 6 and 7.
Finally, "nothing in the legislative history of Art[icle] V, § 6 ... indicates any intent to change the old requirement that one need only be a resident of the circuit [or in this case district] at the time of election or appointment; the intent was merely to eliminate the age and [one year] durational residency requirements.” Cummings, 495 N.W.2d at 504 (Steele, Cir. J., concurring in result). The Commission thought the age and one year residency provisions were “[arbitrary standards.” There is, however, no history suggesting that the Commission rejected all requirements of being a resident at the time of election or appointment. See id.